**HOOS & CO., Claimant-Appellant,**

v.

**DYNAMICS CORPORATION OF AMERICA, Debtor-Appellee.**

**No. 218, Docket 77–5015.**

United States Court of Appeals, Second Circuit.

Argued Nov. 3, 1977.

Decided Jan. 23, 1978.

David B. Rigney, Sullivan & Cromwell, New York City, for claimant-appellant.

Joseph Samet, Krause, Hirsch & Gross, New York City, for debtor-appellee.

Before FRIENDLY, MANSFIELD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This is an appeal of Hoos & Co. (claimant or Hoos) from a decision and order of the United States District Court for the Southern District of New York, Charles E. Stewart, Jr., *Judge*. That decision and order dismissed an appeal from an order of Bankruptcy Judge Edward J. Ryan which disallowed Hoos' $200,000 claim against Dynamic Corporation of America (debtor or Dynamics), a Chapter XI debtor. We affirm.

## I. Facts

In September, 1968, Marine Midland Bank-New York (Marine-New York) acquired in a private placement $500,000 of debtor's negotiable notes. Of these, $200,000 principal amount was held by Marine-New York and Marine Midland Bank-Central (Marine-Central) as cotrustees for the benefit of the Carrier Corporation Retirement Trust (Carrier Trust). The remaining $300,000 was held by Marine-New York in other accounts, registered in the names of Hoos and Jaquith & Co. (Jaquith), nominees of Marine-New York; the $200,000 of notes in issue (Carrier notes) were registered in the name of Hoos alone.

In January, 1972, Marine-New York ceased acting as cotrustee of the Carrier Trust, and Marine-Central became the sole trustee. In the earlier months of 1972, at the direction of Theodore Lipp, a pension trust officer of Marine-New York, the assets of the trust were physically delivered to Marine-Central. Most of the securities in the trust were thereafter reregistered in the name of Marine-Central's nominee, Carsec & Co. (Carsec). However, the Carrier notes were not actually reregistered, although the officers of Marine-New York and Marine-Central believed that the reregistration had occurred.

On August 2, 1972, the debtor filed its petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–99 (1970 & Supp. V 1975). At this time Marine-New York held $300,000 of the debtor's notes, and the Carrier notes were held by Marine-Central, still registered in the name of Hoos. Six days later, on August 8, Mr. Lipp attended a meeting of creditors. Lipp subsequently received a letter dated August 23, 1972, from Stanley Tulchin, secretary of the then unofficial creditors' committee, confirming that the August 8 meeting had been held and that a creditors' committee had been elected. Tulchin enclosed a proof of claim, and requested its prompt execution and return so that it would be available at the next creditors' meeting before the referee in bankruptcy scheduled for September 11, 1972. Tulchin advised that the claim would be filed with the referee and would be used to select a trustee and to make the committee official.

On September 8, 1972, Mr. Lipp returned a proof of claim for $300,000,[1] with a covering letter advising that he was returning

our Bank's Proof of Claim with regard to our holding . . . of which $200,000 is held in our nominee name of Hoos & Co. while an additional $100,000 is held in our nominee name of Jaquith & Co.

These notes are held in our capacity as Trustee or Custodian for various Pension funds.

Joint Appendix at A2. The critical part of the letter for purposes of this appeal stated:

However, earlier this year we had held an additional $200,000 which was transferred to a successor trustee, namely, Marine Midland Bank-Central, and are presently in their nominee of Carsec & Co. I am not a partner of Carsec & Co. but would appreciate your including this claim with ours, since the timing of your meeting Monday does not make it possible to get you their Proof of Claim.

*Id.* Unless the letter of Mr. Lipp to the unofficial creditors' committee secretary constituted a proof of claim, as claimant urges, no written proof of claim for the

---

1. These notes are not in issue, the debtor having satisfied this claim pursuant to its plan of arrangement.

Carrier notes was ever subsequently sent to the court, the debtor or the creditors' committee.[2]

The schedules of creditors filed by the debtor on October 5, 1972, indicated that $500,000 of the debtor's notes were registered to Marine-New York or its nominees. This debt included the $300,000 of notes as specified in the formal proof of claim accompanying Mr. Lipp's letter to Mr. Tulchin, as well as the Carrier notes.[3]

As of September 30, 1973, Bankers Trust replaced Marine-Central as trustee of the Carrier Trust, *see* note 2 *supra,* and the assets of the trust including the notes of the debtor, which unbeknownst to either Marine-New York or Marine-Central remained registered in the name of Hoos, were transferred to Bankers Trust. Bankers Trust apparently unsuccessfully attempted to have registration of the notes transferred to its nominee, but it did not file a proof of claim for the notes in question.

On November 27, 1974, an order of confirmation was entered by the bankruptcy court. At that time the $500,000 registered in nominees of Marine-New York and of Marine-Central still appeared on the debtor's original schedules. Since a proof of claim had been filed only for $300,000, distribution was made only with respect to that proof of claim. No distribution was ever made with respect to the additional $200,000 of Carrier notes.

It was not until April, 1975, over four months after confirmation of the plan of arrangement, that Bankers Trust asked Marine-New York to file an application for allowance of the claim emanating from the Carrier notes through its nominee, Hoos.[4] Finally, on June 16, 1975, over six months after notice of the confirmation was mailed, Hoos moved for allowance of the claim, relying on the September 8, 1972, letter of Mr. Lipp to Mr. Tulchin and the accompanying proof of claim for $300,000 as together constituting a timely filed, valid proof of claim for the Carrier notes.

## II.  Prior Disposition

The bankruptcy judge denied the application on two grounds. First he held that the September 8, 1972, letter did not set forth an explicit demand against the estate of the debtor. Thus it did not constitute an effective proof of claim,[5] since it failed to comply

---

2. Mr. Lipp also requested in his letter that a vice president of Marine-Central, Mr. Hummel, be included on the mailing list of the unofficial creditors' committee. On September 14, 1972, Hummel sent a letter to Tulchin, which stated that he was aware that Lipp had advised Tulchin that Marine-Central held the Carrier notes. It further advised, erroneously it appears, that the notes had been reregistered in the name of Marine-Central's nominee, Carsec. Hummel requested that he receive all subsequent mailings of the committee. Commencing in October, 1972, Hummel regularly received credit communications from the creditors' committee, yet neither his bank nor its nominee ever submitted a proof of claim.

Subsequent communications between the debtor and Marine-New York reveal the nonexistence of any formal proof of claim. In response to a letter from the debtor's controller dated December 31, 1973, requesting "information regarding our indebtedness to you," Joint Appendix at A17, Mr. Hildum, Trust Operations Officer of Marine-New York, on March 12, 1974, identified only the $300,000 of notes held in the names of Hoos and Jaquith, but did not refer to the $200,000 of Carrier notes which remained registered in the name of Hoos.

Claimant explains that the letter from Mr. Hildum did not refer to the Carrier notes because in September, 1973, Bankers Trust Company (Bankers Trust) had replaced Marine-Central as trustee of the Carrier Trust.

3. The bankruptcy court below specifically found that neither the debtor nor its auditors informed Marine-New York of the discrepancy between the debtor's records and the information obtained from Mr. Hildum, *see* note 2 *supra,* though in March of 1974 the debtor's schedules still indicated that $500,000 was owing to Marine-New York. *In re Dynamics Corp. of America,* No. 72B750, at ¶ 17 (S.D. N.Y. Feb. 11, 1977) (findings of fact, conclusions of law and order).

4. Bankers Trust explained that because of its inability to reregister the notes, it did not receive notice of the November, 1974, order approving the debtor's plan of arrangement and specifying December 27, 1974, as the deadline for filing additional proofs of claim. *See* note 16 & accompanying text *infra.*

5. The bankruptcy court, in its oral ruling, discounted the fact that the debtor had scheduled

with the requirement of Rule 301 of the Rules of Bankruptcy Procedure,[6] made applicable to Chapter XI proceedings by Rule 11–33(a) of the Rules of Bankruptcy Procedure.[7] The bankruptcy court also concluded that even if the letter did constitute a proper proof of claim, the secretary of the creditors' committee was not the agent of the court or the agent of the debtor; accordingly, delivery of the letter to Mr. Tulchin was not a valid filing under Rule 509(c) of the Rules of Bankruptcy Procedure.[8]

The district court held that while it might have been "inclined to hold" that the letter of September 8 constituted a proper proof of claim, *In re Dynamics Corp. of America,* No. 72B750, at 2 (S.D.N.Y. May 17, 1977) (oral opinion), filing with the secretary of the creditors' committee was not a proper filing within Rule 509(c). Judge Stewart first noted that "Tulchin, as secretary of the Creditors' Committee, [did] not come within the language of [Rule 509(c)] as one of the named individuals to whom delivery of a proof of claim may be deemed a valid filing."[9] *In re Dynamics Corp. of America, supra,* No. 72B750, at 3. The court refused to extend the rationale behind Rule 509(c) to encompass a creditors' committee secretary, agreeing with the bankruptcy judge that such a person is an agent of the creditors, not of either the court or the debtor, and as such has no duty to forward a claim to the bankruptcy court.[10]

### III. Discussion

We agree with the bankruptcy court that the letter of September 8, 1972, from Mr. Lipp of Marine-New York to Mr. Tulchin was not a valid and effective proof of claim

---

the $200,000 debt, noting that it would be improper for a debtor to pay scheduled creditors who had not filed a proof of claim.

**6.** Rule 301 states:

(a) *Form and Content; Who May Execute.* A proof of claim shall consist of a statement in writing setting forth a creditor's claim and, except as provided in Rules 303 and 304, shall be executed by the creditor or by his authorized agent. A proof of claim for wages, salary, or commissions shall conform substantially to Official Form No. 16 or No. 16A; any other proof of claim shall conform substantially to Official Form No. 15.

(b) Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

Fed.R.Bankr.P. 301. The Rule became effective on October 1, 1973, by order of the United States Supreme Court. It is applicable "to proceedings . . . pending [at the time it became effective], except to the extent that in the opinion of the court [its] application in a particular proceeding then pending would not be feasible or would work injustice, in which event the former procedure applies." 411 U.S. 989, 991 (1973). As to the propriety of applying the former procedure to this case, see note 11 *infra.*

**7.** It states: "Bankruptcy Rule 301 applies in Chapter 11 cases." Fed.R.Bankr.P. 11–33(a). Rule 11–33 became effective on July 1, 1974, by order of the United States Supreme Court, 415 U.S. 1003, 1005 (1974), to then pending proceedings with the identical exception set out in note 6 *supra.*

**8.** Rule 509(c) provides:

Error in Filing. A paper intended to be filed but erroneously delivered to the trustee or receiver, or the attorney for either of them, or to the district judge, referee, or clerk of the district court, shall, after the date of its receipt has been noted thereon, be transmitted forthwith to the proper person. In the interest of justice, the court may order that the paper shall be deemed filed as of the date of its original delivery.

Fed.R.Bankr.P. 509(c). It became effective on October 1, 1973, at the same time as Rule 301. *See* note 6 *supra.* It is made applicable to Chapter XI proceedings by Rules 11–33(b)(1) and 302(b) of the Rules of Bankruptcy Procedure.

**9.** The fact that Tulchin was subsequently appointed standby trustee, a nominal position in Chapter XI reorganizations, was quite properly deemed to be of no assistance in bringing him within the literal language of Rule 509(c).

Provision for a standby trustee in Chapter XI reorganizations is made under Rule 11–27 of the Rules of Bankruptcy Procedure. As the Advisory Committee's note makes clear, a standby trustee does not function while the Chapter XI proceeding is pending. Thus the nomination of Mr. Tulchin as such a trustee is meaningless, since the position has no substance where, as here, the Chapter XI case has not been converted to a bankruptcy proceeding.

**10.** Because we dispose of the case on this ground, it is unnecessary to consider whether the filing of Mr. Lipp's September 8, 1972, letter to the unofficial creditors' committee was a valid delivery to a representative of the court under Rule 509(c).

for the $200,000 principal amount of the debtor's notes under Rule 301(a).[11] Rule 301(a) requires that the creditor or his *authorized* agent execute a writing *setting forth* the creditor's claim. Mr. Lipp's letter cannot by any stretch of the imagination be interpreted as asserting Hoos' claim. It unambiguously indicates that Lipp thought that he had *no* authority to file a claim for this debt. Since he erroneously believed that the negotiable notes had been reregistered in the name of Carsec, of which he was not a partner, and since he knew that Marine-Central, as sole trustee, possessed the Carrier notes, he hardly could have intended to "set forth" a claim as "authorized agent" of anyone,[12] and the letter so states. Thus the fact that he actually may have had authority to file a claim to the Carrier notes because they were in fact registered to Hoos, a nominee of Marine-New York, makes no difference in this regard. The letter simply was not a proof of claim.[13]

From an equitable standpoint it could be argued that when registered notes are in issue the filing of valid proofs of claim serves no useful purpose, especially where, as here, the debtor is entirely aware that the notes are outstanding and even includes the debt in its schedules. Be that as it may, Congress chose to require the filing of proofs of claim for such notes.[14] And it was not unaware that failure to comply with this rule could confer a substantial windfall on the debtor.[15] Moreover, it is apparent from repealed provisions of the

11. Rule 301 is made applicable to Chapter XI proceedings by Bankruptcy Rule 11–33(a). *See* note 7 & accompanying text *supra*. For a discussion of Rule 301(a)'s formal requirements, see 3 *Collier on Bankruptcy* ¶ 57.03 (14th ed. 1976). Since the debtor filed its petition on August 2, 1972, prior to the effective dates of these bankruptcy rules, *see* notes 6–7 *supra*, we must consider whether application of the former procedure would avoid working an injustice otherwise resulting from application of the new rules. *See* note 6 *supra*. Rule 301(a) is an adaptation of the procedures specified in former Section 57(a) of the Bankruptcy Act, former 11 U.S.C. § 93(a) (1970). Employing this earlier procedure would not alter the result reached here. The September 8, 1972, letter would not constitute a valid proof of claim under these prior standards for the same reason that we hold it to be insufficient under the present bankruptcy rules.

12. Hoos asserts that if the letter is considered along with the accompanying claim form for the $300,000, somehow they together constitute a unified claim for the $500,000 of notes. We find this argument unpersuasive given the contents of Mr. Lipp's letter which, while serving as a cover letter for an unquestionably proper proof of claim for $300,000 of notes, specifically disclaimed ownership of or authority over the $200,000 of notes. The intent to claim only the $300,000 appears not simply on the face of the letter. Mr. Hildum's subsequent letter, *see* note 2 *supra*, supports our conclusion that the September 8 communications were not a proof of claim with respect to the Carrier notes. Mr. Hildum's communication of March 12, 1974, again indicated that the only indebtedness to Marine-New York was the $300,000 of notes for which the valid proof of claim had already been filed.

13. Rule 301(a) also requires that the proof of claim conform to official form. *See* note 6 *supra*. The creditor refers us to a host of cases, *e. g.*, *In re High Point Seating Co.*, 181 F.2d 747 (2d Cir. 1950); *In re Gibraltor Amusements, Ltd.*, 315 F.2d 210 (2d Cir. 1963), as expressing the liberal approach of this circuit concerning the *form* of an informal proof of claim sufficient to satisfy Rule 301(a). The fact remains, however, that *someone* must set forth a claim, that is, make a demand, however obliquely, in the first instance. Unlike *Gibraltor Amusements, supra*, and *High Point Seating Co., supra*, which involved letters directly from the creditor asserting claims on its behalf, here neither the creditor nor its nominee or anyone acting on their behalf asserted such a claim. Mr. Hummel's September 14, 1972, letter to Tulchin, *see* note 2 *supra*, did mention the notes in question, erroneously stating that they were registered in Carsec, nominee of Marine-Central. But it does not purport to be a proof of claim therefor.

14. Chapter XI contains no provision similar to 11 U.S.C. § 598 (1970), applicable in Chapter X proceedings, which permits an indenture trustee to file claims for all holders of securities issued pursuant to the indenture who have not filed claims. Only those holders who have filed claims, however, are considered in computing the majority necessary for acceptance of a plan. It might well be wise to amend Chapter XI to include such a provision in the interest of protecting such beneficial holders.

15. Prior to 1963, creditors were not required to file a proof of claim to participate in a Chapter XI arrangement. In 1963 a filing requirement was imposed. Chapter XI creditors generally were given only six months after the first meet-

Bankruptcy Act and a current Bankruptcy Rule that Congress was well aware of the lesser need for a filing requirement when

ing of creditors to file a proof of claim. Bankruptcy Act § 355, Pub.L.No.88–175, § 2, 77 Stat. 330 (1963). This period was extended up to the time of confirmation by the 1967 amending legislation, Pub.L.No.90–156, § 2, 81 Stat. 510 (1967), and remains substantially the same for purposes of this case under current law. See note 16. The purpose of this legislation is explained in the Report of the House Committee on the Judiciary:

In 1963, the Congress enacted an amendment to the Bankruptcy Act (Public Law 88–175) which required that creditors file their claims in order to participate in distributions under chapter XI of the Bankruptcy Act. It also required that such claims must be filed within 6 months. The 1963 amendment corrected the prior practice of making distribution solely on the basis of the debtor's schedule which had permitted the filing of inflated or fictitious debts. The purpose of the 1963 legislation was to assure that distributions would be made on the basis of a comparative examination of the debtor's schedule with the claims of the creditors. By limiting the time in which creditors could file such claims, the 1963 amendments intended to assure expedition in the administration of chapter XI cases.

The objectives of the 1963 legislation were salutary. However, the committee has learned that the time limitations imposed have created difficulties and confusion where reasonable certainty previously existed. H.R. 2519 retains the objectives of Congress as expressed in 1963 by permitting only those creditors who file claims to participate under the arrangement. However, in order to avoid imposing onerous and unrealistic burdens on creditors which may prevent them from participating and thereby provide a windfall or undeserved benefit to the debtor, the bill enables creditors to file their claims up to the date of confirmation. In some cases confirmation may occur before the expiration of the 6-month period. In others, it may come later, but by adopting the day of confirmation as the closing date for filing claims, much of the confusion and inconsistent application of chapter XI may be prevented.

The principle of the 1963 amendment to chapter XI with respect to filing of creditor claims is retained in the bill. Creditors are still required to file a claim to participate. Two exceptions to the requirement that claims be filed by the date of confirmation are (1) a claim arising from the rejection of an executory contract of the debtor may be filed within such time as the court may allow, and (2) a claim may be filed late by a

scheduled claims are involved, and provided all the additional protection for creditors in this situation that it thought appropriate.[16]

creditor—that is, after date of confirmation—if scheduled by the debtor but in that case shall not be allowed in an amount in excess of that set forth in the debtor's schedule.

H.R. 2519 would restore the law as it existed prior to the 1963 amendment except that it would carry out the congressional objective of that amendment by requiring every creditor to file a claim before being permitted to participate under a confirmed arrangement. Furthermore, the bill would protect creditors listed on the debtor's schedule who failed to file their claims within the specified period and thus prevent the debtor from obtaining an undeserved windfall. The bill would also protect holders of claims that arise from the rejection of executory contracts.

H.R.Rep.No.122, 90th Cong., 1st Sess. (1967) (reprinted in S.Rep.No.751, 90th Cong., 1st Sess. (1967), U.S.Code Cong. & Admin.News 1967, p. 1996. See 9 Collier on Bankruptcy, supra, at ¶¶ 7.09[3]–.09[3.1] & 7.25[6].

16. Where a claim scheduled by the debtor has not been filed by the creditor, the latter is permitted to file his claim within 30 days after the notice of confirmation is mailed. Rule 11–33(b)(2)(A) provides:

A claim, including an amendment thereof, must be filed before confirmation of the plan except as follows:

(A) if scheduled by the debtor as undisputed, not contingent, and liquidated as to amount, a claim or an amendment to a claim may be filed within 30 days after the date of mailing notice of confirmation to creditors but in such event shall not be allowed for an amount in excess of that set forth in the schedule  . . . .

Fed.R.Bankr.P. 11–33(b)(2)(A). The Rule became effective on July 1, 1974, see note 7 supra, prior to the confirmation in this case. However, the result would be the same under the similar superseded provisions. See note 15 supra; 9 Collier on Bankruptcy, supra, at ¶ 7.09[3]. See also Rule 906(b):

(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1)  . . .  order the period enlarged if request therefor is made before the expiration of the period originally prescribed or  . . .  extended  . . .  or (2) upon application made after the expiration of the specified period permit the act to be done where the failure to act was the result of

This clear Congressional intent to require filing of valid proofs of claim within the time limits that it has set is sufficient to preclude us from finding exceptions to these rules in the supposed interest of equity. Beyond this, it cannot be said that when a claim has been scheduled by a debtor, the filing requirement imposing time limitations is a purposeless formality. For one thing, it insures that creditors know what they will receive under a plan within a reasonable time after they vote to confirm it. It also helps to avoid fraudulent inflation of amounts due creditors, by a debtor, for his benefit. In the instant case the amount owed to Hoos is beyond dispute. But there must come a time when an arrangement becomes final, so to speak. Not only are the creditors who vote for the plan entitled to this. The debtor itself must be able to function, and new creditors might not extend credit, absent such finality. It would be inequitable as to all three—old creditors, debtor, and new creditors—not to have a cut-off date beyond which even claims on a scheduled indebtedness may not be filed. Thus, however much we would like to permit the bankruptcy court to consider in a particular case, including this one, whether it would be "equitable" to permit late filing of a scheduled claim, to do so would put the bankruptcy courts in the unenviable position of indefinitely having to consider claims whenever some sort of excuse is asserted. Such a procedure would destroy the objective of finality which Congress obviously intended to promote.

Judgment affirmed.

excusable neglect; but it may not extend the time for taking any action under Rules 107(b)(2), 115(b)(4) insofar as it makes Rule 50(b) of the Federal Rules of Civil Procedure applicable in bankruptcy cases, 302(e), 403(c), 607, 752(b), 802, 923, and 924, except to the extent and under the conditions stated in them.

Rule 11–63(2) adds to Rule 906(b) a reference to 11–33(b)(2):

(2) The references to various rules in Rule 906(b) shall also include a reference to Chapter 11 Rule 11–33(b)(2).

Of course, here, no action was taken by anyone within 30 days after notice of confirmation was mailed.