In re Philip Leroy GREENE d/b/a Liberty Liquor, et al., Debtors.

**Rhode Island Hospital Trust National Bank, Claimant.**

Civ. A. No. 83–467 S.

United States District Court,
D. Rhode Island.

Oct. 14, 1983.

Boyajian, Coleman & Harrington, by John Boyajian, Providence, R.I., for debtors and trustee.

Schecter, Abrams & Verri, by David A. Schecter, Providence, R.I., for R.I.H.T.N.B.

*Memorandum and Order*

SELYA, District Judge.

In this action, Rhode Island Hospital Trust National Bank ("RIHTNB") seeks review and reversal of a decision by the U.S. Bankruptcy Court for the District of Rhode Island (Votolato, J.) directing disallowance of its claim in the amount of $59,422.40. Disallowance was grounded upon untimely filing of RIHTNB's proof of claim.

**I.**

The facts are not in dispute. The debtors filed a Chapter 13 bankruptcy petition on June 3, 1980. The initial creditors' meeting was scheduled for June 19, 1980. Thus, under Rule 13–302 of the Rules of Bankruptcy Procedure,[1] the bank was required to file a proof of claim by December 19, 1980. Yet, RIHTNB did not so file until January 26, 1982.

The claim at issue did appear, however, on the schedule attached to the debtors' bankruptcy petition. Moreover, RIHTNB attended all bankruptcy proceedings as well as several settlement meetings. The claimant also submitted documentation of its claim to the trustee prior to December, 1980.

**II.**

RIHTNB contends that its submission of such documentation to the trustee constituted the filing of an informal proof of claim; and that, since such filing was accomplished within the applicable six-month period, the January 26, 1982 filing was merely an amendment of its "original" proof of claim. RIHTNB further asserts that, insofar as the allowance of its claim would not result in prejudice to any party,

equitable principles favor the granting of the requested relief.

The bankruptcy court addressed essentially the same arguments below. It concluded that to permit RIHTNB to go forward with its claim would be inconsistent with established precedent favoring strict adherence to time limits imposed by the bankruptcy rules. The instant petition for review thereupon ensued.

**III.**

The trustee concedes that he corresponded with RIHTNB in regard to the bank's claim, and that RIHTNB attended proceedings in relation to the debtors' bankruptcy petition. There is, however, one additional fact which undercuts the bank's position: RIHTNB never filed any documentation of its claim, informal or otherwise, with the court during the operative six-month period.

It is clear that the viability of a creditor claim in insolvency proceedings does not depend upon the filing of a letter-perfect proof of claim during the period imposed by Rule 13–302. *See* 3 COLLIER ON BANKRUPTCY ¶ 57.11[3] at 202 (14th ed. 1977). Indeed, it is well settled that requests to amend formerly filed, but imperfect, proofs of claim are to be treated liberally, *Perry v. Certificate Holders of Thrift Savings,* 320 F.2d 584, 590 (9th Cir. 1963); *National Bank of Westchester v. Wurlitzer Co. (In re Gibraltor Amusements Ltd.),* 315 F.2d 210, 214 (2nd Cir.1963); *In re Vega Baja Lumber Yard, Inc.,* 285 F.Supp. 143, 145 (D.P.R.1968), and that the filing of an amended proof of claim after the expiration of the stipulated period may be sanctioned as long as there was previously something in the record which establishes the "existence, nature and amount of . . . [the] claim." 3 COLLIER, *op. cit. supra,* ¶ 57.11[3] at 202. *See, e.g., Sun Basin Lumber Co. v. United States,* 432 F.2d 48 (9th Cir.1970) (creditor had filed papers in re-

---

1. Rule 13–302(e) provides that "[u]nsecured claims, whether or not listed in the Chapter 13 Statement, must be filed within six months after the first date set for the meeting of credi-

tors in the Chapter 13 case." Bankruptcy Rule 302(e) similarly limns such a six-month filing period.

sponse to trustee's petition to sell certain real and personal property which contained evidence of both the amount due and the debtor's promise to pay); *Perry v. Certificate Holders of Thrift Savings, supra* (the creditor of a debtor bank had filed passbooks with the court during the statutory period).

*Fausett v. Murner,* 402 F.2d 961 (5th Cir. 1968) and *Fyne v. Atlas Supply Co.,* 245 F.2d 107 (4th Cir.1957), relied on by RIHTNB, do not stand for a contrary or more lenient proposition. In *Fausett,* the court concluded that the debtor's modification of the wage earner plan at the first meeting of creditors constituted "not only knowing conduct on the part of the Referee, but enabled the court to be informed by its own files of the existence, nature and amount of the claim." 402 F.2d at 963. And *Fyne,* in fine, sets forth the relevant test as being whether there was anything *in the record* which established the creditor's claim. 245 F.2d at 108. The *Fyne* court allowed the claim there *sub judice* because the bankruptcy proceeding was "shown by its own files" to have stemmed from the creditor's attempt to enforce its claim through a prior action. *Id.* at 109.

■ The general rule appears to take shape as follows: if, within the mandated period, a creditor has affirmatively undertaken to press its claim by action which manifests, on the judicial record, a clear intention to pursue the matter, then in such event, technical flaws are subject to later correction. Yet, such a creditor cannot rely merely on the debtor's ritualistic acknowledgement of the existence of a putative claim. It has been held almost universally that the mere listing of a creditor's claim in the debtor's schedule is an inadequate basis for a belated "amended" proof of claim. *See, e.g., Hoos & Co. v. Dynamics Corp.,* 570 F.2d 433, 437–38 (2nd Cir.1978); *Fyne v. Atlas Supply Co.,* 245 F.2d at 108. *But see, Dresser Industries, Inc. v. Rite Autotronics Corp. (In re Rite Autotronics Corp.),* 27 B.R. 599 (Bkrtcy.App. 9th Cir.1982). Applying this logic, it would seem that submissions to the trustee—as opposed to filings with the court—should, standing alone, be viewed as impuissant in this context. Such

submissions do not flag the record or semaphore in any meaningful way to the parties in interest that the creditor remains in the chase. And, in the absence of such a discernible signal, the balance of the equities tips sharply against the creditor in question.

It is true that there have been some cases which have allowed an amendment to a putative claim solely on the basis of communication between the creditor and the trustee during the filing period. *See, County of Napa v. Franciscan Vineyards, Inc. (In re Franciscan Vineyards, Inc.),* 597 F.2d 181 (9th Cir.1979); *National Bank of Westchester v. Wurlitzer Co., supra; Scottsville National Bank v. Gilmer (In re Pitts),* 37 F.2d 227 (4th Cir.1930). These cases, while supportive of RIHTNB's position, are alien to the mainstream of judicial thought and must be regarded skeptically for their precedential value here. Cases such as *Franciscan Vineyards, Inc.* and *National Bank of Westchester* are prototypical of a line of cases which were decided in accordance with the rule originally developed in *J.B. Orcutt Co. v. Green,* 204 U.S. 96, 27 S.Ct. 195, 51 L.Ed. 390 (1907). In *Orcutt,* the Supreme Court construed General Order 21, the predecessor of Bankruptcy Rules 302 and 509, to mean that a proof of claim could be filed either with the court *or* with the trustee. As several district courts have pointed out, the *Orcutt* doctrine is no longer controlling. *E.g., Levine v. First National Bank of Lincoln Wood (In re Evanston Motor Co., Inc.),* 26 B.R. 998, 1004–5 (N.D.Ill. 1983); *In re American Beef Packers, Inc.,* 429 F.Supp. 887, 889 (D.Neb.1977). The *ratio decidendi* of these later cases is clear: *Orcutt* was based on the last sentence of now-repealed General Order 21; and this sentence required the trustee to deliver any proof of claim received by him to the Referee. 204 U.S. at 100, 27 S.Ct. at 196. Insofar as the Order placed this duty on the trustee, the Court treated a filing with the trustee as the functional equivalent of a filing with the court. *Id.* at 102, 27 S.Ct. at 197. In contrast, the extant rule (which has been in effect at all times material to this action) provides that, as a general matter, proofs of claim "shall be filed with the

referee ..." *See* Bankruptcy Rule 509(a). Rule 509, moreover, places the trustee under the duty previously prescribed in General Order 21 only in cases where the proof of claim has been misdelivered. *See* Bankruptcy Rule 509(c). In light of these procedural changes, *Orcutt* has plainly lost its vitality.

The rationale underlying *Scottsville National Bank v. Gilmer, supra,* would also appear to be obsolete. In *Scottsville,* the Fourth Circuit relied heavily on the broad equitable powers of the bankruptcy court as then perceived. In the ensuing half-century, however, the sweep of those equitable powers vis-a-vis timely filing requirements has shrunk significantly. *See* 1 COLLIER, *op. cit. supra,* ¶ 2.09 at 176 n. 9; 3 COLLIER, *op. cit. supra,* ¶ 57.27[2] at 423 n. 14. As remarked by the district court in *In re Martin Edsel,* 228 F.Supp. 538, 540–41 (D.N. H.1963):

> [I]t would appear to be the better part of both reason and authority that the equity powers of the bankruptcy court are not altogether shackled by the six months' statute of limitations ... but that, nevertheless, such powers may be exercised to lift the statutory bar only in the extraordinary case where some element of fraud or injustice has prevented a creditor from filing his claim in timely fashion.

*See also Milando v. Perrone,* 157 F.2d 1002, 1004 (2nd Cir.1946).

Furthermore, in *Scottsville,* the claimant had not only participated in the bankruptcy proceedings, but was responsible for increasing the value of the estate by at least fifty percent. 37 F.2d at 228. Thus, there were compelling reasons for the court to engage the gears of its equitable powers. There are no kindred considerations in the case at bar. RIHTNB filed its proof of claim more than a year after the expiration of the prescribed period. It made no special contribution to the enhancement of the bankruptcy estate. It was not the victim of fraud or of sharp practices. And, as the court below noted, it cannot be gainsaid that this creditor is a sophisticated financial institution chargeable with knowledge of bankruptcy procedures. *In re Greene,* 30 B.R. 729 at 731 (Bkrtcy.D.R.I.1983).

Finally, and perhaps most importantly, to allow RIHTNB to "amend" its non-existent claim would be to elevate fiction over fact, and in the process to ignore the time limit for filing clearly set forth by Congress in Rule 13–302. The relevant case law is replete with language to the effect that mere knowledge on the part of the trustee is an insufficient basis for the untimely filing of a formal proof of claim. *Perry v. Certificate Holders of Thrift Savings,* 320 F.2d at 589; *Fyne v. Atlas Supply Co.,* 245 F.2d at 108; *In re Vega Baja Lumber Yard, Inc.,* 285 F.Supp at 147. As observed in *Vega Baja,* "[r]egardless of how liberal an approach it had as to what is sufficient to constitute the basis for an amendment, the courts have consistently searched the record for an assertion or claim, no matter how informal, that would permit amendment." 285 F.Supp. at 146. To do otherwise would fly in the face of the weight of authority which considers the six-month time limit as being in the nature of a statute of limitations and thus "mandatory and immutable" *See* 3 COLLIER, *op. cit. supra,* ¶ 57.27. As the Second Circuit has wisely noted:

> This clear Congressional intent to require filing of valid proofs of claim within the time limits that it has set is sufficient to preclude us from finding exceptions to these rules in the supposed interests of equity. Beyond this, it cannot be said that when a claim has been scheduled by a debtor, the filing requirement imposing time limitations is a purposeless formality. For one thing, it insures that creditors know what they will receive under a plan within a reasonable time ... It would be inequitable as to all three-old creditors, debtor, and new creditors—not to have a cut-off date beyond which even claims on a scheduled indebtedness may not be filed. Thus, however much we would like to permit the bankruptcy court to consider in a particular case, including this one, whether it would be "equitable" to permit late filing of a scheduled claim, to do so would put the bankruptcy courts in the uneviable position of indefinitely

having to consider claims whenever some sort of excuse is asserted. Such a procedure would destroy the objective of finality which Congress obviously intended to promote.

*Hoos & Co. v. Dynamics Corp.,* 570 F.2d at 439.

And, if any doubt lingered at the time of the decision below, it has since been set to rest by a recent holding of the Court of Appeals for the First Circuit, *In re Harbour House Operating Corp.,* No. 83–1325, (1st Cir. Sept. 29, 1983). There, in dealing with a somewhat analogous filing deadline in a bankruptcy setting, Chief Judge Campbell, writing for a unanimous panel, stressed that such filing requirements, while admittedly technical in a sense, have roots which are deeply embedded in important substantive policies. *Id.,* slip op. at 5. The court quoted with approval the following passage from *Century Laminating, Ltd. v. Montgomery,* 595 F.2d 563, 568 (10th Cir.), *cert. granted* 444 U.S. 897, 100 S.Ct. 204, 62 L.Ed.2d 132, *cert. dismissed,* 444 U.S. 987, 100 S.Ct. 516, 62 L.Ed.2d 417 (1979):

> Expense, inconvenience, and what a litigant may believe to be injustice, are unavoidable consequences of failure to abide by a statute or rule, e.g., a statute of limitations.

Further, the First Circuit in *Harbour House* held that the sentiments which it had earlier voiced in the context of the filing requirements of the Uniform Commercial Code were equally apposite in the bankruptcy arena. The principle was stated thusly:

> Efforts by courts to fashion equitable solutions to mitigate the hardship on particular creditors of literal application of statutory filing requirements would have the deleterious effect of undermining the reliance which can be placed upon them. The harm would be more serious than the occasional harshness resulting from strict enforcement.

*In Re Harbour House Operating Corp.,* slip op. at 6, quoting *Uniroyal, Inc. v. Universal Tire & Auto Supply,* 557 F.2d 22, 23 (1st Cir.1977).

So here: the ends of justice will best be furthered by holding RIHTNB to the strict adherence which Rule 13–302(e) normally merits. Any relaxation of the rule, on the facts of this case, would run athwart the substantial public interest in the expeditious processing of bankruptcy matters. *See Hoos & Co. v. Dynamics Corp.,* 570 F.2d at 439.

### IV.

In light of the authorities set forth above, and given the advantage of the First Circuit's recent guidance in *Harbour House,* the decision of the court below disallowing RIHTNB's proof of claim as untimely was in accordance with applicable law. The decision is therefore affirmed, the instant appeal dismissed, and the matter remanded to the bankruptcy court for further proceedings consonant herewith.

*So Ordered.*