In re the CHARTER COMPANY, et al., Debtors.

CHARTER CRUDE OIL COMPANY, Appellant,

v.

PETROLEOS MEXICANOS, Appellee.

Bankruptcy Nos. 84–289–BK–J–GP through 84–332–BK–J–GP, and 85–1033–BK–J–GP.
No. 89–49–Civ–J–16.

United States District Court, M.D. Florida, Jacksonville Division.

Jan. 10, 1991.

James H. Post, Smith & Hulsey, Jacksonville, Fla., for appellant.

Levin & Weintraub & Crames, New York City, for debtors.

Earl M. Barker, Jr., Slott & Barker, Jacksonville, Fla., Alfredo R. Perez, Bracewell & Patterson, Houston, Tex., Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for appellee.

## ORDER

JOHN H. MOORE, II, District Judge.

This cause is before the Court on the Charter Crude Oil Company's (hereinafter "Charter" or "CCOC") appeal from the December 29, 1986 and November 23, 1988 rulings of the United States Bankruptcy Court for the Middle District of Florida, filed March 20, 1989. Petroleos Mexicanos (hereinafter "Pemex") filed a response on March 31, 1989; Charter then filed a reply brief on April 24, 1989.

Two main issues are presented in this appeal: (1) whether the court below erred in ruling that Pemex was a known creditor entitled to actual notice of the bar date in the Charter bankruptcy proceeding in accordance with due process of law; and, (2) whether the court below erred in interpreting the Pemex/Charter contract to allow Pemex's proof of claim. Because this Court finds that the bankruptcy court failed to determine whether Charter could reasonably have believed that Pemex had abandoned its claim (in which case Pemex would stand as an "unknown" creditor entitled only to publication notice of the bar date), and failed to determine whether reasonably diligent efforts would have uncovered Pemex's claim, this case shall be reversed and remanded for a new trial to determine whether Pemex was a known or unknown creditor of Charter. The Court does not reach the second issue raised on appeal.

### Facts

The relevant facts in this case, as found by the bankruptcy court, are as follows. In 1981 the parties entered into a sales contract for the purchase of crude oil by Charter from Pemex. Delivery of the crude oil took place on a monthly basis at Pemex's facilities in Mexico. Between May 31, 1981 and June 3, 1981, Charter took delivery of 397,326 barrels of crude oil from Pemex (hereinafter the "June Lifting"). Subsequently, Pemex issued an invoice in the amount of $13,780,237 which purported to document the delivery.

On June 3, 1981, Pemex reduced its crude oil prices by $4.00 per barrel; this price reduction was made "effective June 1, 1981" by Pemex. The disputed invoice did not document the price reduction. Charter paid for the delivery by an amount $1,589,-304 less than the invoice, because it presumptuously considered the $4.00 per barrel price reduction to apply to the May 31–June 3 delivery. Pemex disputed Charter's interpretation of the price reduction's

applicability, asserting that it was due the $1,589,304.

During late 1981, both parties attempted to reconcile the situation. On December 30, 1981, Pemex sent a telex to Charter requesting payment. No payment was made, and Pemex took no further action to obtain payment, either through a new demand or by instituting legal proceedings, until Pemex filed a motion for enlargement of time to file its claim in the bankruptcy proceedings on June 30, 1986. Charter contends that it believed the dispute was resolved in 1982 without further liability to Charter, and that at a minimum Pemex's inaction over this four and one-half year period led Charter to reasonably believe that Pemex had abandoned its claim.

Charter filed for relief under 11 U.S.C. Chapter 11 on April 20, 1984. Charter did not list Pemex as a creditor in the schedule of assets and liabilities it filed in the bankruptcy proceeding, nor did Charter amend the schedule to include Pemex as a creditor at a later date. As a result, Pemex received no prior notice of the bar date of November 19, 1984 for filing proofs of claims in order to participate in the voting on and distribution through the plan of reorganization. Notice of the bar date was published in the Wall Street Journal and in other newspapers [1] on August 15, 1984. Pemex first received formal notice of the bankruptcy proceeding through service of a summons and complaint for turnover in April, 1986. The bankruptcy court further found that, although Pemex employees in New York City and Washington, D.C. were responsible for collecting information regarding energy-related matters, no proof exists that a Pemex representative who knew of the dispute over the $1,589,304 had actual knowledge of the Charter bankruptcy proceeding.

The court below also heard testimony from two Charter employees that the dispute over the $1,589,304 was resolved in early 1982. These employees stated that they were generally aware of the price

---

**1.** These other publications, as designated by the bankruptcy court, were the New York Times, Florida Times–Union, Houston Chronicle, St. Louis Post–Dispatch, and the Oil Daily. *See* Order of the Bankruptcy Court, at Ex.B, Aug. 3, 1984.

dispute (although they were not specifically involved in the subject contract and the dealings with Pemex), and that they each believed the dispute had been resolved because the subject of the dispute had never come up in any of the business discussions they personally had with Pemex representatives. The court below was not persuaded by this testimony that the dispute had been resolved, although the court made no finding as to whether this or other evidence showed that Charter could reasonably have believed that Pemex had abandoned its claim, that Charter knew or should have known of the claim despite Pemex's lengthy silence on the subject, or that a reasonably diligent search by Charter would have uncovered Pemex's claim.

The bankruptcy court held that Pemex was a known creditor of Charter entitled to formal, actual notice of the bar date. The court cited little evidence to support its conclusion that Pemex was a known creditor, except for the finding that "at the time [Charter] filed its schedules of assets and liabilities, it knew that there was at least a possibility of a claim being made by Pemex." *See* Order of the Bankruptcy Court, Dec. 29, 1986. 68 B.R. 396, 398. The court also held that publication notice could not be justified where the bar date was publicized only once, and where Pemex, a foreign corporation, would not necessarily subscribe to the publications in which the notice appeared. *Id.* at 398–99. Accordingly, the court granted Pemex's motion to file its proof of claim after the bar date.

### Standard of Review

 This Court sits as an appellate court in reviewing decisions of the bankruptcy court. Bankr.Rule 8013 (1984). Factual findings of the bankruptcy court may not be set aside unless they are clearly erroneous. *See In re Martin,* 761 F.2d 1163, 1165 (6th Cir.1985); *U.S. v. Owens,* 84 B.R. 361, 363 (E.D.Pa.1988). Conclusions of law are reviewed *de novo. Matter of Multiponics,* 622 F.2d 709, 713 (5th Cir. 1980). The admission of evidence is committed to the sound discretion of the bankruptcy court. *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1374 (5th Cir.

1981). Accordingly, evidentiary decisions of the bankruptcy court are subject to review under an abuse of discretion standard.

### Discussion
#### I.

It is well-settled that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their [claims]." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In determining the constitutional adequacy of notice, *Mullane* made clear that "whether a particular method of notice is reasonable depends upon the particular circumstances." *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988).

 The circumstances presented in this case involve the rules for Chapter 11 bankruptcy proceedings conducted in the federal bankruptcy courts. Bankruptcy Rule 3003(c)(3) requires the bankruptcy court to establish a bar date for filing proofs of claim: all creditors must file proofs of claim before this bar date, and extensions are granted only for cause. Bankruptcy courts are required to enforce the bar date strictly so that the objective of finality in bankruptcy proceedings may be furthered. *See Hoos & Co. v. Dynamics Corp. of America,* 570 F.2d 433, 439 (2nd Cir.1978); *In re Charter Co.,* 113 B.R. 725, 728 (M.D.Fla.1990) (citing *In re Kay Homes, Inc.,* 57 B.R. 967 (Bankr.S.D.Tex. 1986)). Confirmation of a Chapter 11 plan discharges the debtor from all debts which arose before the confirmation date. *See Charter,* 113 B.R. at 728.

 Bankruptcy law divides creditors into two groups when determining the proper notice to be given of the upcoming bar date: known and unknown creditors. Due process requires that the debtor's known creditors be given actual notice of the bar date. *See City of New York v.*

*New York, New Haven & Hartford R.R.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). However, unknown creditors are entitled to mere publication notice of the bar date. *See Matter of GAC Corp.,* 681 F.2d 1295, 1300 (11th Cir.1982).

■ As the court below noted, the legal determination of whether a creditor is known or unknown to the debtor is not a simple one. However, the Supreme Court has provided some guidance in analogous contexts. Unknown creditors include those whose identities or claims are not "reasonably ascertainable" and those who have merely conceivable, conjectural,[2] or speculative claims. *See Pope,* 108 S.Ct. at 1347; *Matter of GAC Corp.,* 681 F.2d at 1300. It is reasonable to dispense with actual notice to these unknown creditors, provided that the debtor makes "reasonably diligent efforts" to uncover their identities and claims. *See id.* at 1347 (quoting *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983)). Reasonable diligence will of course vary from context to context, and may depend on the nature of property interest held by the debtor. *Small Engine Shop, Inc. v. Cascio,* 878 F.2d 883, 888–89 (5th Cir.1989); *see also In re Sharon Steel Corp.,* 110 B.R. 205, 206 (Bkrtcy.W.D.Pa. 1990) (requiring actual notice to creditors whose claims the debtor knew or should have known of when serving notice of the bar date). A reasonably diligent effort does not require that a debtor engage in "impracticable and extended searches ... in the name of due process." *Mullane,* 339 U.S. at 317, 70 S.Ct. at 658 (where the State was allowed to give publication notice to those persons with interests that did not come to the trustee's knowledge in the "due course of business").

■ While the debtor does have a duty to give notice to known creditors of the bar date, it is not the debtor's duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it. *See Matter of Chicago, Rock Island & Pacific R.R. Co.,* 788 F.2d 1280, 1283 (7th Cir.1986) (Posner, J.). To the contrary, "[I]t is the part of common prudence for all those who have any interest in [a thing], to guard that interest...." *Mullane,* 70 S.Ct. at 658 (quoting Chief Justice Marshall's opinion in *The Mary,* 9 Cranch 126, 144, 3 L.Ed. 678 (1815)).[3]

■ Also, a debtor is not required to give actual notice of the bar date to a creditor where the debtor could reasonably have believed that the creditor had abandoned its claim against the debtor. *See Matter of Chicago, Rock Island & Pacific R.R. Co.,* 788 F.2d at 1283; *In re Chicago Pacific Corp.,* 773 F.2d 909, 916 (7th Cir. 1985). As *Mullane* itself made clear, publication notice is sufficient for those creditors whom the debtor can reasonably assume to have abandoned their property interest. *See Mullane,* 339 U.S. at 316, 70 S.Ct. at 657 (noting that "A state may indulge in the assumption that one who has left tangible property in the state ... has abandoned it ...", thus making publication notice constitutionally appropriate for that person).

II.

■ In the case at bar, the bankruptcy court erred as a matter of law when it based its holding that Pemex was a known creditor on the finding that "at the time CCOC filed its schedules of assets and liabilities, it knew that there was at least a *possibility of a claim* being made by Pemex." *See* Order of the Bankruptcy Court, Dec. 29, 1986, 68 B.R. 396, 398 (emphasis

---

**2.** In distinguishing a conjectural claim from a non-conjectural claim, the maxim *in claris non est locus conjecturis* provides guidance: "in matters which are obvious there is no room for conjecture." Thus a proper inquiry would be whether Charter was required to engage in conjecture or speculation about whether Pemex had a claim at the time Charter compiled its list of creditors.

**3.** At the same time, "a [creditor's] ability to take steps to safeguard its interests does not relieve the [debtor] of its constitutional obligation" to provide adequate notice of the bar date. *See Mennonite,* 462 U.S. at 799, 103 S.Ct. at 2712.

added).[4] Even assuming that Charter knew there was a possibility of a claim by Pemex, Charter was not required to give actual notice to creditors with merely conceivable, conjectural or speculative claims. *See Pope, supra.* A reasonably diligent effort by Charter to identify and notify creditors would not necessarily include notifying every possible creditor, no matter how speculative their claim might be against Charter. *See Mennonite*, 103 S.Ct. at 2711 n. 4. Also, if Charter reasonably believed, or could have reasonably believed, that Pemex had abandoned its claim, then even Charter's actual or constructive knowledge of a remote possibility of a claim by Pemex would not raise Pemex to the level of a known creditor deserving of actual notice of the bar date.

▪ Pemex contends that the presence of the invoice for the disputed amount in Charter's files at the time Charter compiled its list of creditors demonstrates that Pemex was a known creditor. However, this contention ignores the abandonment theory recognized by the Seventh Circuit and referenced by the *Mullane* Court. If Charter could reasonably have believed that Pemex had abandoned its claim, then the presence of the invoice in Charter's files would appear to be irrelevant; the invoice would remain in Charter's files even after Charter believed Pemex's claim to have been abandoned.

### III.

Charter also contends that the bankruptcy court failed to consider relevant evidence in determining that Pemex's claim was known to Charter. The first alleged error occurred during the cross-examination of Pemex's representative, when Charter's counsel was attempting to establish that Pemex did not carry its alleged $1,598,304 debt as an account receivable on its books and records until 1986.

> Q. Sir, I don't think you are following my question; at least, I don't think you are responding to the exact question. The question is: Did Charter Crude Oil Company appear on the list of accounts receivable for foreign customers in 1982?
>
> Mr. Hulme, counsel for Pemex: Your Honor, I have an objection to this line of questioning. I don't think it is relevant to the issue as to whether Pemex received notice of the bankruptcy proceeding or notice—particularly notice of the bar date here. It has nothing to do with that issue. I think it's really attempting to go to the merits of the claim.
>
> The Court: What is the relevancy, Mr. Post?
>
> Mr. Post, counsel for Charter: Your Honor, we contend that Charter Crude did not know of Pemex's claim when we prepared our schedules, and we certainly think it is relevant that, if Pemex didn't know, how should we know?
>
> The Court: You don't have to put it on your schedules. Once you found out about it, you could have amended your schedules to deal with it. The question is what they knew about it, not what you knew about it, and the question is: When did they learn about it? And I am inclined to agree that this has nothing to do with it. The Court sustains the objections.
>
> Mr. Post: If I may Your Honor, I think both questions are relevant, because, if we had no reason to know of the Pemex claim, then the fact that we omitted them from the schedules is, under the case law, is relevant, and the constructive notice that we gave in the Wall Street Journal was sufficient to satisfy all due-process requirements to all creditors such as Pemex.
>
> The Court: All right. The Court has sustained the objection.

*See* 84–289–BK–J, Transcript of Proceedings, at pages 43–44, filed Oct. 6, 1986 [hereinafter "Trial"].

The second occasion occurred later during Charter's cross-examination of Pemex's representative, when Charter's counsel was attempting to establish that Pemex had no

---

**4.** The bankruptcy court pointed to no evidence in support of its finding.

objections to Charter's response to an audit inquiry which set forth the amounts paid for the June Lifting and the absence of any unpaid obligations to Pemex.

Q. Isn't it also true that in 1983 Charter Crude received your request for information from the Audit Ministry of the Mexican Government requesting payment and other information regarding the purchases of crude oil by Charter Crude from Pemex in 1980 and 1981?

A. There was information handed to the Comptroller's Office.

Q. And isn't it true that Charter Crude sent a response showing no unpaid obligation to Pemex?

Mr. Hulme, counsel for Pemex: Objection, Your Honor. I think it is hearsay, because the documents show when. I also don't see the relevancy of this.

The Court: I don't see the relevancy.... These things may become very important if we get to the merits of a claim. We are simply determining whether or not the motion to file a late claim should be permitted. The Court sustains the objection.

*See* Trial at 45–46.

The final occasion occurred during the direct examination of Charter's representative, when counsel was attempting to establish that Charter's books and records made no reference to Pemex's alleged debt, and that Pemex's alleged claim was not reasonably ascertainable under the procedure by which Charter identified its known creditors. When asked by the bankruptcy court how this evidence was relevant, Charter's counsel responded that the evidence would "prove that Charter did not know, it had no reason to know, other than the Pemex claim, and, therefore, as a matter of law, constructive notice is sufficient to sat-

isfy ... due process." The bankruptcy judge responded that it "couldn't agree to that" legal theory, and subsequently sustained the objection. *See* Trial at 75–77.

■ While the correctness of any one of these evidentiary rulings taken alone may be a close question, the bankruptcy court's failure to admit or properly consider the above evidence as a whole demonstrates that court's mistaken view of the law.[5] The court's evidentiary rulings detailed above were an abuse of discretion.[6] In particular, the above evidence appears to be relevant to: (1) whether Pemex's claim was reasonably ascertainable to Charter; (2) whether Charter knew or should have known of Pemex's claim; and, (3) whether Charter reasonably could have believed that Pemex had abandoned its claim. A review of the record indicates that the bankruptcy court, in ruling on these evidentiary issues, was primarily focused on whether Pemex received actual notice of the bar date, rather than whether Pemex was even entitled to receive actual notice. For example, the court frequently framed the main issue as "what knowledge [Pemex] obtained of the filing of the bankruptcy and the fact that a claim was to be filed at a given time." *See* Trial at 25; *see also* *id.* at 29 (where the court framed the issue to be decided as "[W]hat knowledge did [Pemex] obtain from any other sources of the filing of the bankruptcy and that the claim needed to be filed by a particular date?"); at 43–46, 58, & 75–77. The court should have first determined whether Pemex was a known creditor before it considered whether Pemex received actual notice of the bar date.

### IV.

■ Finally, the court below also seemed to hold that publication notice

---

**5.** Although each portion of the above disputed evidence eventually became a part of the record either through the subsequent admission of deposition testimony or proffer, a review of the trial transcript shows that the judge did not consider the evidence at that time. In addition, the December 29, 1986 Order of the Bankruptcy Court reveals that the lower court considered this evidence under a mistaken view of the law, whereby the court found that Pemex was a

known creditor simply because Charter knew there was a remote "possibility" of a claim being made by Pemex. *See supra* at pages 654–656.

**6.** While this Court finds the above evidence to be relevant to the issue of whether Pemex was a known or unknown creditor, this Court of course renders no opinion as to the probative value of such evidence; that is a matter for the bankruptcy court to decide upon remand.

**658**

would deprive Pemex of due process because of Pemex's status as a foreign corporation. The court ruled that "notice of the November 19, 1984, bar date by publication cannot be justified as a substitute for formal notice in these circumstances.... Pemex is a foreign organization which would not necessarily subscribe to the publications in which the notice appeared." *See* Order of the Bankruptcy Court, Dec. 29, 1986, 68 B.R. 396, 398–99. However, publication notice is legally adequate notice to unknown creditors, whether they be sophisticated trade creditors or individual tort claimants. *See GAC Corp.*, 681 F.2d at 1300; *In re Charter Co.*, 113 B.R. at 728. To the extent that the lower court's opinion can be read to require more than publication notice for unknown creditors, that conclusion is a further error of law.

### Conclusion

Accordingly, the bankruptcy court's order of December 29, 1986, shall be reversed and remanded for a new trial. It is now

ORDERED AND ADJUDGED:

■ 1. This cause is reversed and remanded to the bankruptcy court for a new trial to determine whether Pemex was a known or unknown creditor of Charter. In particular, the bankruptcy court should consider (1) whether Charter could have discovered Pemex's claim through a reasonably diligent search; (2) whether Charter knew or should have known of Pemex's claim; and, (3) whether Charter could reasonably have believed that Pemex had abandoned its claim, when Charter filed its schedules of assets and liabilities.

2. The bankruptcy court is directed to take further evidence, if necessary, to make the findings required by paragraph (1) of this Order.

DONE AND ORDERED.