**In re ENVIRODYNE INDUSTRIES, INC.,** Sandusky Plastics, Inc., Sandusky Plastics of Delaware, Inc., Viskase Corp., Viskase Holding Corp., Viskase Sales Corp., d/b/a Filmco, Clear Shield National, Inc., Envirodyne Finance Co., Debtors.

**Bankruptcy No. 93 B 319.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 19, 1997.

Christopher Stuart of Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, P.C., Chicago, IL, for Movant.

Jeffrey M. Schwartz of Holleb & Coff, Chicago, IL, for Respondent.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

This matter comes before the court on the motion of Eisenberg Brothers, Inc. ("Eisenberg Bros."), Servall Products, Inc. ("Servall") and St. Cloud Restaurant Supply ("St. Cloud") (collectively, "Plaintiffs") for summary judgment ordering that Plaintiffs' antitrust claims against Clear Shield National, Inc. ("Clear Shield") were not discharged by this Court's Confirmation Order of December 17, 1993 and the cross-motion of Clear Shield for summary judgment finding that the aforementioned claims were discharged.

For the foregoing reasons, the Plaintiffs' motion is denied and Clear Shield's motion is granted.

## BACKGROUND

Clear Shield was and is a company incorporated in the State of Illinois engaged in the business of manufacturing and selling plastic cutlery. On January 7, 1993 ("Petition Date"), Clear Shield filed a petition for relief under Chapter 11 of the Bankruptcy Code. On March 19, 1993, the court entered an Administrative Order ("Bar Date Order") establishing June 15, 1993 as the last day to file pre-petition claims against the debtor's estate. Pursuant to the Bar Date Order, Clear Shield served notice of the bar date to the creditors listed on its schedules on April 16, 1993. In addition, notice of the bar date was published in *The Wall Street Journal* and *The New York Times* on May 14, 1993 and in the *Chicago Tribune* on May 16, 1993.

To prepare its schedules and Statement of Financial Affairs, officers and employees of Clear Shield reviewed the company's books and records in order to determine what claims existed against Clear Shield. Clear Shield listed on its schedules and the mailing matrix of the bar date all entities that were included on its accounts payable listing as of the Petition Date. It also listed customers that had previously received rebates from Clear Shield and who may have been eligible for additional rebates. Certain disputed environmental, personal injury and trucking undercharge claims were also added.

On or about April 6, 1993, Clear Shield filed its schedules and Statement of Financial Affairs. None of the antitrust claims raised by Plaintiffs' motion were listed. Servall and Eisenberg Bros. were not Clear Shield customers and were not listed anywhere on the schedules. St. Cloud was a Clear Shield customer, but was not listed on the schedules because it did not owe Clear Shield any money as of the Petition Date and Clear Shield did not owe any money to St. Cloud.

On August 10, 1993, the court entered an Order authorizing and directing the debtor to send notice of the hearing on confirmation of the plan of reorganization to all creditors and to publish notice of the confirmation hearing in *The Wall Street Journal, The New York Times* and the *Chicago Tribune.* Clear Shield served notice of the confirmation hearing on all of its creditors listed on its schedules on August 16, 1993. Notice of the confirmation hearing was published in *The Wall Street Journal* and *The New York Times* on August 23, 1993 and in the *Chicago Tribune* on August 22, 1993. The debtor's First Amended Plan of Reorganization as Twice Modified (the "Plan") was confirmed by order entered December 17, 1993 ("Confirmation Order").

On August 13, 1993, between the Petition Date and the Confirmation Order, Clear Shield was served with a subpoena duces tecum from the Antitrust Division of the United States Department of Justice. The subpoena stated that a grand jury in the Eastern District of Pennsylvania was conducting an investigation into possible price fixing, customer allocation and related crimes in the plastic cutlery industry. The subpoena requested the production of a voluminous amount of documents, including, *inter alia,* the personnel files for anyone who "participated in any way in proposing, establishing, recommending, or approving any prices, . . .", the files, telephone logs and memoranda of those persons, Clear Shield's financial reports, documents identifying every product the company manufactured with its sales information, information about Clear Shield's customers, information about its marketing and other business plans, and every document dealing in any way with pricing. Clear Shield produced documents responsive to the subpoena on December 19, 1993 and on March 14, 1994.

Employees and former employees of Clear Shield were subpoenaed by a grand jury on or about July 15, 1995. Ms. Rose Nudos was the only employee who actually appeared and that was on September 14, 1995. Clear Shield has never received any letter indicating that it is a target of the grand jury investigation and it has not been indicted by the grand jury.

On or about February 5, 1996, the Plaintiffs filed several lawsuits ("Antitrust Lawsuits") in the Eastern District of Pennsylvania, seeking injunctive relief and damages from Clear Shield and other defendants for alleged violations of the antitrust laws beginning in October 1990 and continuing through

April 1992. The complaints allege that there was a national conspiracy to fix the prices of plastic cutlery. After the complaints were filed, Clear Shield's bankruptcy counsel contacted the Plaintiffs' counsel and informed them that Clear Shield had filed for relief under Chapter 11 of the Bankruptcy Code on January 7, 1993 and that an order confirming a plan of reorganization had been entered on December 17, 1993. Clear Shield's counsel stated that the joinder of Clear Shield as a party defendant in the Antitrust Lawsuits violated the Confirmation Order.

Subsequently, the Plaintiffs made this motion pursuant to Fed.R.Civ.P. 60(b)(3) and (6) requesting that this court enter an order holding that the Confirmation Order did not discharge the Plaintiffs' antitrust claims and that the Plaintiffs should be able to pursue their claims against Clear Shield in District Court. Clear Shield has cross-moved, requesting an order finding that the antitrust claims were discharged by the Bar Date Order, the Confirmation Order and § 1141 of the Bankruptcy Code (11 U.S.C. § 1141) and that Plaintiffs are enjoined from pursuing their claims pursuant to the Bar Date Order, the Confirmation Order and § 524 of the Bankruptcy Code (11 U.S.C. § 524).

## JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and local rule 2.33 of the United States District Court of the Northern District of Illinois. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(O). Pursuant to the Confirmation Order, the Court retained jurisdiction to "resolve controversies and disputes regarding interpretation and implementation of the Plan."

## DISCUSSION

Summary judgment motions are governed by Fed.R.Civ.P. 56(c) and made applicable to bankruptcy proceedings under Fed. R. Bankr.P. 7056. Summary judgment is granted to avoid unnecessary trials when there are no genuine issues of material fact in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The moving party in a motion for summary judgment has the initial burden of demonstrating that there are no genuine issues of material fact and that judgment in its favor should be granted as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). An issue of material fact will prevent summary judgment if the issue is outcome determinative under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

Fed.R.Civ.P. 60(b)(3) and (6), made applicable in bankruptcy cases by Fed. R. Bankr.P. 9024, provide in pertinent part as follows:

Rule 60. Relief from Judgment or Order.

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken....

...

It is immediately apparent from the face of this statute that the Plaintiffs are not entitled to relief under Rule 60(b)(3) because they did not make this motion within one year of entry of the Confirmation Order. In order to obtain relief under Rule 60(b)(6), Plaintiffs would have to demonstrate that they are entitled to relief from the Confirmation Order for "any other reason justifying relief ...".

The Confirmation Order provides, in pertinent part, as follows:

the confirmation of the Plan shall immediately discharge the Debtors from any

Claim and any "debt" ... that arose before the Confirmation Date, and the Debtors' liabilities in respect thereof shall be extinguished completely, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that ... arose before the Confirmation Date ...

11 U.S.C. § 1141(d)(1) provides in pertinent part, that "the confirmation of a plan— (A) discharges the debtor from any debt that arose before the date of such confirmation ..." The word "debt" is defined in 11 U.S.C. § 101(12) as "liability on a claim".

A claim is defined by the Bankruptcy Code, in § 101(5) as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Congress unquestionably expected this definition to have wide scope." *In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2nd Cir. 1991). The definition has been read to bring within its scope certain types of environmental claims not dissimilar in many characteristics to an antitrust claim. In *In re Texaco*, 182 B.R. 937 (Bankr.S.D.N.Y.1995), the reorganized debtor moved to open its Chapter 11 case to enforce its Confirmation Order against state court litigants making environmental claims against it. The claims were essentially that the claimants' property had been contaminated by chemicals emanating from Texaco's property. The evidence showed that all of the physical events leading to the contamination occurred prior to the entry of the Confirmation Order. The contamination was "susceptible of detection" prior to confirmation. *Id.* at 952. The claimants alleged that Texaco discovered the contamination two years prior to confirma-

tion, but that they did not discover it until five years later. The Court found that either party could have detected the contamination before the close of the bankruptcy case and that the claims were therefore matured and uncontingent. The court opined that such matured, uncontingent claims that are unknown to the claimants, but capable of detection, come within the statutory definition of a claim and are discharged by a confirmation order. *Id.* at 952, 954.

■ Plaintiffs' antitrust claim was similarly discharged by the Confirmation Order. According to the Plaintiffs' own allegations in the Antitrust Lawsuits, the antitrust violations took place beginning in 1990, well before the case was commenced. The alleged violations were as susceptible to detection as the chemical contamination in the Texaco case. The claims were matured and uncontingent at that time and were therefore discharged by the Confirmation Order.

The Plaintiffs' argument that this court must find either that Clear Shield was aware that the antitrust claims existed prior to the Confirmation Order or that the claims did not arise until after the Confirmation Order and in either case were not discharged demonstrates a lack of understanding as to how a claim is defined within the bankruptcy context and how a claimant can be unaware that he has a claim and still relinquish his rights under certain circumstances.

■ Generally, unless the court extends the time for filing a proof of claim, an untimely claim in Chapter 11 is barred and the creditor forfeits his entitlement to distribution from the estate. *In re Plunkett*, 82 F.3d 738 (7th Cir.1996). Nonetheless, a late claim will not be barred if the debtor did not provide adequate notice of the claim bar date to potential claimants. Due process requires that a debtor give notice that is reasonably calculated under the circumstances to apprise an interested party of the pendency of the bankruptcy case. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

The gravamen of this matter is whether the Plaintiffs received notice of their potential claims sufficiently adequate to satisfy due

process requirements. They strenuously attempt to paint this as an issue of fraud, accusing Clear Shield and its special counsel of hiding Clear Shield's alleged price fixing activities. Even assuming the worse case scenario, that the debtor knew that it was liable for antitrust violations, there remains the question of who should have been notified and in what manner. Two of the Plaintiffs were not customers of Clear Shield and the third had once placed one order with Clear Shield. The Plaintiffs seem to be arguing that the debtor should have chased down every person who ever bought plastic cutlery over a three year period to personally notify such person that it might have an antitrust claim against the debtor. Due process does not require such action.

The standard for due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations omitted]." *Mullane,* 339 at 313, 70 S.Ct. at 657.

■ Every due process claim requires the balancing of interests between the state and the individual. The state has an interest in bringing bankruptcy cases to a final close in a reasonable manner without loose ends that could affect not only the debtor's reorganization but also the interests of other creditors. Individuals have a constitutional right to due process of law prior to being deprived of a property right. *Id.*

The Supreme Court "has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning .... in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Id.* at 316, 70 S.Ct. at 658.

The Court has reiterated this position several times. In *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), the Court considered the adequacy of notice to creditors in the context of a probate proceeding, not dis-similar to a bankruptcy proceeding. It found that "[f]or creditors who are not 'reasonably ascertainable,' publication notice can suffice. Nor is everyone who may conceivably have a claim properly considered a creditor entitled to actual notice .... it is reasonable to dispense with actual notice to those with mere 'conjectural' claims." Id. at 490, 108 S.Ct. at 1347. Even in *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), where the Court found that the City, as an easily ascertainable lien creditor, was entitled to personal notice, it also acknowledged that "when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication."

■ This court has had to determine, therefore, whether Plaintiffs were known or unknown creditors. *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.),* 125 B.R. 650, 654 (M.D.Fla.1991)("Bankruptcy law divides creditors into two groups when determining the proper notice to be given of the upcoming bar date: known and unknown creditors."). A known creditor is one who is "known or 'reasonably ascertainable by the debtor.'" *Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3rd Cir.1995)(citing *Tulsa Professional Collection Services, Inc.,* 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988)). An unknown creditor is one whose identity or claim is not reasonably ascertainable and who has merely conceivable, conjectural or speculative claims. *Mullane,* 339 U.S. 306, 70 S.Ct. 652; *Chemetron Corp.,* 72 F.3d 341, 346; *Charter Crude Oil Co.,* 125 B.R. 650, 655. If the Plaintiffs were known creditors, they were entitled to actual notice of the bankruptcy proceedings. If the Plaintiffs were unknown, they were entitled to the publication notice that was in fact provided in the debtor's case. *Charter Crude Oil Co.,* 125 B.R. at 655–656.

■ The debtor is under an obligation to make reasonably diligent efforts to identify creditors and their claims. *Chemetron Corp.,* 72 F.3d 341, 346 (citing *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983) ). Reasonable diligence varies de-

pending on the context. The requisite search "focuses on the debtor's own books and records." *Id.* at 347. It does not require that a debtor engage in "impracticable and extended searches . . . in the name of due process." *Charter Crude Oil Co,* 125 B.R. at 654 (quoting *Mullane* 339 U.S. 306, 70 S.Ct. 652). It is not the debtor's duty to search out every conceivable or possible creditor and urge that person to make a claim against it. *Id.* (citing *Matter of Chicago, Rock Island & Pacific R.R. Co.,* 788 F.2d 1280, 1283 (7th Cir.1986)).

That appears to be what the Plaintiffs would have required of the debtor. Plaintiffs ask this court to infer from the facts provided that the debtor knew that antitrust claims existed against it and that it should have sought out every person in the United States who might have purchased plastic cutlery from 1990 through 1993, obtained their names and addresses and urged them, personally, to file an antitrust claim against it. To require this extraordinary action one must assume that simply because one receives a subpoena duces tecum from the Justice Department that one is guilty of a national conspiracy to fix prices. Further that this court should infer that the debtor would necessarily have known that it would be the subject of an antitrust indictment. Contradicting this contention are the circumstances that have followed. Clear Shield has not been indicted for antitrust violations although two of its competitors have. While this fact is not dispositive of Plaintiffs' claims, neither does it support the inferences that it asks this Court to draw.

■ It is undisputed that Clear Shield's officers and employees reviewed its books and records during February and March 1993 in order to prepare the schedules and Statement of Financial Affairs for the bankruptcy case. It is also undisputed that a thorough review of Clear Shield's books and records would not have revealed the names of Servall and Eisenberg Bros. because they were not customers of Clear Shield. Having exercised reasonable diligence in searching its records, even if Clear Shield's officers had been aware of antitrust violations there would have been no practicable way to per-

sonally notice either Servall or Eisenberg Bros. of the potential claim.

■ With respect to St. Cloud, which had purchased Clear Shield's products once, the Plaintiffs simply have offered totally insufficient proof that Clear Shield knew or should have known that St. Cloud held a claim for antitrust violations on its part. Plaintiffs have offered the following proof on their motion: Clear Shield received a subpoena duces tecum from the United States Justice Department. The law firm of Sidley & Austin, which was approved as special counsel to all of the debtors in Clear Shield's case, requested that it not be required to disclose privileged information in its fee applications, which request was granted. Four of the seven fee applications that were submitted contained time spent responding to the Justice Department's subpoena. Each of these applications contained a summary of the work, to wit, "the applicant assisted Clear Shield in responding to a subpoena which was issued by a Pennsylvania grand jury which alleges antitrust violations with respect to sales of Clear Shield's plastic cutlery products."

The Plaintiffs would like this court to come to the conclusion that the debtor and its special counsel were hiding something because of the large number of hours Sidley and Austin spent reviewing documents and because the detailed work descriptions were redacted (pursuant to court order). The court cannot come to that conclusion. Who can say that the number of hours spent by Clear Shield's lawyers means Clear Shield is guilty? Clearly not this court. How many hours does it take a guilty person? Perhaps innocence takes more time under our system. For this court to come to that conclusion on the basis suggested would be an abuse of this court's discretion. Furthermore, the work summary that was submitted in publicly filed fee applications clearly stated what the law firm was doing and satisfied the court.

■ The court is equally unimpressed by the materials submitted to supplement the

record.[1]  Three documents were submitted. The first is a fax cover sheet on Dispoz-o Plastics, Inc. (one of the defendants in the Antitrust Litigations) letterhead addressed to "PRI" and dated "6/10/93".  The handwritten memorandum on it reads: "To: David, Todd, Sybilla, cc: Peter.  Sweetheart, James River, Polar and Wincup have all announced a 5% increase on their product lines.  I understand Clear Shield will announce Monday and Amcel has their announcement letter 'ready to go'.  This leaves only us, Dart and Jet to announce; my *proposed* announcement is shown below.  Peter and I will discuss this on Monday and decide if we will send out this notification.  FYI only—Mike."  The second document is a notice to Dispoz-o's customers that its products would increase in price by 5% due to price increases on resin and other raw materials.  The document has a handwritten note which reads "NO NO! DO NOT SEND THIS".  The third document is a letter addressed to "Dear Valued Customer" on Clear Shield letterhead dated June 10, 1993, advising that its prices would increase 5%.

Counsel for Plaintiffs submitted an affidavit with these documents, explaining that they were part of a large document production in the Antitrust Lawsuits.  Nothing in those documents, by themselves, incriminates Clear Shield.  If this is all that the Plaintiffs have to demonstrate that Clear Shield violated antitrust laws after a year of litigation they ought not to be asking this court to open a three year old Confirmation Order to pursue their claims.

## CONCLUSION

For the reasons stated above, Clear Shield's motion for summary judgment is granted and the Plaintiffs' motion for summary judgment is denied.

---

1.  Plaintiffs have moved to supplement the record with certain documents that have been produced in the Antitrust Litigation.  Clear Shield opposed the motion, claiming that the documents have not been sufficiently authenticated.  The motion is granted on the grounds that the documents were produced by Dispoz-o Corporation to the Justice Department in response to a subpoena.  The very act of producing them and representing them to be the documents described in the subpoena authenticates them.  *See U.S. v. Brown,* 688 F.2d 1112, 1116 (7th Cir.1982).