In re ENVIRODYNE INDUSTRIES, INC., Sandusky Plastics, Inc., Sandusky Plastics of Delaware, Inc., Viskase Corporation, Viskase Holding Corporation, Viskase Sales Corporation, d/b/a Filmco, Clear Shield National, Inc., Envirodyne Finance Company, Debtors.

EISENBERG BROTHERS, INC., Servall Products, Inc., and St. Cloud Restaurant Supply, Appellants,

v.

CLEAR SHIELD NATIONAL, INC., Appellee.

No. 97 C 2910.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 23, 1997.

Michael R. Shelist, Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, P.C., Chicago, IL, for Appellants.

Jeffrey Michael Schwartz, Holleb & Coff, Chicago, IL, for Debtors.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge.

Appellants, Eisenberg Brothers, Inc. ("Eisenberg"), Servall Products, Inc. ("Servall"), and St. Cloud Restaurant Supply ("St. Cloud"), appeal the decision of the Bankruptcy Court, *In re Envirodyne Indus., Inc.*, 206 B.R. 468 (Bankr.N.D.Ill.1997), that determined appellants were enjoined from pursing their antitrust claims against appellee, Clear Shield National Inc. ("Clear Shield"), pursuant to Clear Shield's Bar Date Order, Confirmation Order, and 11 U.S.C. § 524 of the Bankruptcy Code since appellants' claims were discharged by Clear Shield's Bar Date Order, Confirmation Order, and 11 U.S.C. § 1141 of the Bankruptcy Code. Appellee Clear Shield has filed a motion to strike portions of appellants' reply memorandum in support of appeal. For the following reasons, appellee Clear Shield's motion to strike

is granted in part, tabs A, B, and C of appellants' appendix to their reply brief are stricken, and denied in part and the decision of the bankruptcy court is affirmed.

## BACKGROUND

On January 7, 1993 (the "Petition Date"), appellee Clear Shield, a company engaged in the business of manufacturing and selling plastic cutlery, filed a bankruptcy petition for relief under Chapter 11 of the Bankruptcy Code. Thereafter, appellee Clear Shield reviewed its books and records and interviewed its employees to prepare its schedules and statement of financial affairs and to determine what claims existed against it. Appellee Clear Shield listed on its schedules all entities that were included on its accounts payable listing as of the Petition Date, customers that had previously received rebates and who may have been eligible for additional rebates, and certain disputed environmental, personal injury, and trucking undercharge claims. Appellants Eisenberg and Servall were not and had never been customers of appellee Clear Shield, did not owe appellee Clear Shield any money, and thus were not listed on any of appellee Clear Shield's schedules. Appellant St. Cloud was a customer of appellee Clear Shield between December 1990 and April 1992 but was not listed on appellee Clear Shield's schedules because appellant St. Cloud did not owe appellee Clear Shield any money nor did appellee Clear Shield owe appellant St. Cloud any money as of the Petition Date.

On March 19, 1993, the bankruptcy court entered an administrative order (the "Bar Date Order") establishing June 15, 1993 as the last day to file prepetition claims against the estate. On April 6, 1993, appellee Clear Shield filed its schedules and statement of financial affairs. Pursuant to the Bar Date Order, on April 16, 1993 appellee Clear Shield served notice of the bar date to all of the creditors listed on its schedules. In addition, appellee Clear Shield published notice of the bar date in the *Wall Street Journal* and the *New York Times* on May 14, 1993 and in the *Chicago Tribune* on May 16, 1993.

On August 10, 1993, the bankruptcy court entered an order directing appellee Clear

Shield to send notice of the hearing on confirmation of the plan of reorganization to all creditors and to publish notice of the confirmation hearing. Appellee Clear Shield served notice of the confirmation hearing on all of its creditors listed on its schedules on August 16, 1993. Notice of the confirmation hearing was published in the *Wall Street Journal* and the *New York Times* on August 23, 1993 and in the *Chicago Tribune* on August 22, 1993. Appellee Clear Shield's and the other debtors' First Amended Plan of Reorganization as Twice Modified was confirmed by the bankruptcy court on December 17, 1993 (the "Confirmation Order").

On August 13, 1993, after the bar date but before the Confirmation Order was entered, appellee Clear Shield was served with a subpoena duces tecum from the Antitrust Division of the United States Department of Justice. The subpoena requested the production of numerous documents from appellee Clear Shield for an Eastern District of Pennsylvania grand jury investigation of possible price fixing, customer allocation, and related crimes in the plastic cutlery industry. Although initially requested to comply with the subpoena by October 6, 1993, appellee Clear Shield was allowed to produce the responsive documents on December 19, 1993 and March 14, 1994. Employees and former employees of appellee Clear Shield were subpoenaed to testify before the grand jury on July 15, 1995. Only one Clear Shield employee actually appeared before the grand jury. That was on September 14, 1995. Appellee Clear Shield has never received any letter indicating that it is a target of the grand jury investigation and it has not been indicted by the grand jury. Two of appellee Clear Shield's competitors were indicted by the grand jury.

On February 5, 1996, appellants filed several lawsuits in the Eastern District of Pennsylvania seeking injunctive relief and damages from appellee Clear Shield and other defendants for alleged violations of the antitrust laws beginning in October 1990 and continuing through at least April 1992. After the complaints were filed, appellee Clear Shield's bankruptcy counsel contacted appellants' counsel and informed them that Clear

Shield had filed for relief under Chapter 11 of the Bankruptcy Code on January 7, 1993 and that an order confirming the plan of reorganization had been entered on December 17, 1993. Appellee Clear Shield maintained that appellants' lawsuits violated the Confirmation Order.

Thereafter, appellants filed a motion with the bankruptcy court pursuant to Rules 60(b)(3) and 60(b)(6) of the Federal Rules of Civil Procedure requesting the bankruptcy court to enter an order holding that the Confirmation Order did not discharge appellants' antitrust claims and that appellants would be allowed to pursue their claims against appellee Clear Shield. Appellants and appellee Clear Shield filed cross-motions for summary judgment with the bankruptcy court. On March 19, 1997, Chief Bankruptcy Judge Schwartz denied appellants' motion for summary judgment on their Rules 60(b)(3) and 60(b)(6) motions and granted appellee Clear Shield's motion for summary judgment, holding that appellants' antitrust claims arose prior to the Petition Date and appellants were unknown creditors thus appellants were enjoined from pursing their antitrust claims against appellee Clear Shield pursuant to Clear Shield's Bar Date Order, Confirmation Order, and 11 U.S.C. § 524 of the Bankruptcy Code since appellants' claims were discharged by Clear Shield's Bar Date Order, Confirmation Order, and 11 U.S.C. § 1141 of the Bankruptcy Code.

Appellants now appeal the bankruptcy court's order. Appellants appear to concede that the denial of their Rule 60(b)(3) motion was correct in that their motion was time-barred since it was made well after one year after the date of entry of the Confirmation Order. Appellants did not raise this point in arguing for reversal ' of the bankruptcy court's order. Appellants argue instead that the bankruptcy court's order denying their Rule 60(b)(6) motion should be reversed since the bankruptcy court erred in weighing the evidence in favor of appellee Clear Shield and against appellants in considering the cross-motions for summary judgment, appellee Clear Shield's conduct prevented appellants from timely filing their claims, appellants' right to due process was violated when

they did not receive formal notice of the bankruptcy proceedings, and the bankruptcy court erred in finding that appellants' antitrust claims were capable of detection prior to the bankruptcy proceedings.

## STANDARD OF REVIEW

Motions for relief under Rule 60 of the Federal Rules of Civil Procedure are applicable to bankruptcy cases pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure. Review of a denial of a motion for relief under Rule 60(b)(6) is highly deferential. *U.S. v. 8136 S. Dobson St.*, 125 F.3d 1076 1082–83 (7th Cir.1997). "Relief under Rule 60(b) 'is an extraordinary remedy and is granted only in exceptional circumstances.' " *Id.* (quoting *Dickerson v. Board of Educ.*, 32 F.3d 1114, 1116 (7th Cir.1994)). The denial of the motion is reviewed for abuse of discretion, where no reasonable person could agree with the holding. *Id.*

In this case, Chief Bankruptcy Judge Schwartz had the parties submit cross-motions for summary judgment to aid his decision in ruling on appellants' Rule 60(b) motion, presumably to determine if appellants' claim had merit. "Judicial economy requires that a Rule 60(b) movant demonstrate a meritorious claim or it would be a waste of time to reopen proceedings." *Delta Employees Credit Union v. Gonzalez (In re Gonzalez )*, 73 B.R. 754, 758 (N.D.Ill.1987). Chief Bankruptcy Judge Schwartz reviewed the parties claims based on the appropriate summary judgment standard of review. Review of the bankruptcy court's findings of fact are upheld unless they are clearly erroneous and review of the bankruptcy court's legal conclusions is de novo. *In re Lefkas Gen. Partners*, 112 F.3d 896, 900 (7th Cir.1997). The decision to grant summary judgment is a conclusion of law and therefore is reviewed de novo. *Id.* Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When reviewing cross-motions for summary judgment, the court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir.1996). Accordingly, this court will review the bankruptcy court's denial of appellants' motion for summary judgment and granting of appellee Clear Shield's motion for summary judgment *de novo* drawing all reasonable inferences in favor of appellants, and the bankruptcy court's therefore denial of appellants' Rule 60(b) motion for abuse of discretion.

## ANALYSIS

### I. *Appellee Clear Shield's Motion to Strike*

Appellee Clear Shield has filed a motion to strike certain portions of appellants' reply memorandum in support of appeal. Appellee Clear Shield argues first that appellants attached three documents in an appendix to their reply brief that were neither submitted to nor considered by the bankruptcy court and were not included as part of appellants' designation of record on appeal. The three documents are: (1) Tab A: Stipulation and Order dated June 4, 1996 filed in the United States District Court for the Eastern District of Pennsylvania; (2) Tab B: Stipulation and Order dated May 7, 1996 filed in the United States District Court for the Eastern District of Pennsylvania; and (3) Tab C: Indictment entitled *United States v. Amcel Corp., Dispoz-O Plastics, Inc., Lloyd Gordon, and Peter Iacovelli.* Appellants argue that this court should take judicial notice of these documents since they are records from the district court for the Eastern District of Pennsylvania.

Generally, a district court acting as an appellate court in reviewing a bankruptcy case decision may consider only the evidence that was presented before the bankruptcy court and made a part of the record. *Edgewater Walk Apartments v. Mony Life Ins. Co. of America*, No. 93 C 3612, 1993 WL 525485, at *1 (N.D.Ill. Dec. 10, 1993). Although this court may take judicial notice of proceedings in other courts if they have a direct relation to matters at issue, *Green v. Warden, United States Penitentiary*, 699 F.2d 364, 369 (7th Cir.1983), the three documents of which appellants believe this court

should take judicial notice could have been included in the record below and presented as evidence to the bankruptcy judge since all of the documents existed at the time of the bankruptcy judge's decision. The bankruptcy judge granted appellants' December 11, 1996 motion to supplement the record. These documents could have been presented to the bankruptcy judge. They were not and will not be allowed on appeal to be presented for the first time. *See Zell v. Jacoby–Bender, Inc.,* 542 F.2d 34, 38 (7th Cir.1976) (declining to take judicial notice of plaintiff's documents stating that the alleged facts to which the documents pertained were not new and could have been included in the record). Since these three documents were not included in the documents submitted to the bankruptcy court, this court grants appellee Clear Shield's motion to strike these documents. *Reed v. City of Chicago,* 77 F.3d 1049, 1054 n. 6 (7th Cir.1996); *Magnum Foods, Inc. v. Continental Cas. Co.,* 36 F.3d 1491, 1502 n. 12 (10th Cir.1994).

■ Appellee Clear Shield also moves to strike certain factual assertions in appellants' reply brief arguing that they are not supported by the record below and appellants have not cited to any portion of the record below. Appellants argue that the statements they made in their reply brief are reasonable inferences they drew from the facts presented to the bankruptcy court. This court is aware of the difference between facts supported by evidence, reasonable inferences that are drawn from facts, and unsubstantiated statements. This court will review appellants' reply brief following those principles as well as the principles of the Federal Rules of Civil Procedure and the proper standard of review and will accord appellants' statements the weight that they deserve. This court, however, will not strike the statements from appellants' reply brief and therefore appellee Clear Shield's motion to strike these statements is denied.

## II. *Appeal of Bankruptcy Court Order*

### A. *Weighing the Evidence in Deciding the Parties' Cross-Motions for Summary Judgment*

■ Appellants' first argument in support of their appeal is that the bankruptcy judge erred by not drawing inferences in favor of them. In ruling on cross-motions for summary judgment, the court must consider each motion individually. *Marshall v. Clark Equip. Co.,* No. 94 C 4770, 1995 WL 443954, at *1 (N.D.Ill. July 25, 1995). The standard of review for summary judgment motions remains the same. When cross-motions are filed, summary judgment is granted only if one moving party is entitled to a judgment as a matter of law upon facts not genuinely disputed. *United States v. Brown (In re Brown),* 79 B.R. 789, 792 (Bankr. N.D.Ill.1987). In this case, there is no indication that Chief Bankruptcy Judge Schwartz erred in reviewing appellants' motion for summary judgment and appellee Clear Shield's motion for summary judgment. Chief Bankruptcy Judge Schwartz correctly laid out the standard of review for summary judgment motions and proceeded to review the parties' motions accordingly. There is no evidence that the bankruptcy court did not evaluate the admissible evidence in the light most favorable to appellants. Chief Bankruptcy Judge Schwartz concluded that there was no genuine dispute of any relevant matters of fact and determined that appellee Clear Shield was entitled to judgment as a matter of law. This court also agrees with the bankruptcy court's conclusion. Therefore, there is no basis for upsetting the bankruptcy court's opinion.

### B. *Time of Filing of Appellants' Claims*

■ Appellants second argument in support of their appeal is that the bankruptcy court erred in denying them equitable relief by not granting their Rule 60(b)(6) motion because appellants claim that appellee Clear Shield's conduct caused their delay in filing their antitrust claims. Appellants state that appellee Clear Shield was issued a subpoena duces tecum by the Antitrust Division of the United States Department of Justice on August 12, 1993 and appellee Clear Shield had special counsel that, appellants believe, devoted considerable time aiding appellee Clear Shield in the grand jury investigation. Appellants then argue that appellee Clear Shield attempted to cover-up

the potential antitrust claims against it by not responding to the subpoena until two days after the Confirmation Order was entered and by having its special counsel file its fee petitions under seal to the bankruptcy court, thereby allegedly concealing the time spent aiding appellee Clear Shield with the alleged antitrust allegations. Appellants claim that appellee Clear Shield should have included the antitrust investigation in the bankruptcy filings.[1]

This court can find no conduct on the part of appellee Clear Shield that prevented appellants from filing their antitrust claims sooner. There is no reason that appellee Clear Shield had to include in its bankruptcy documents the fact that it was served with a subpoena by a grand jury after the bar date for filing claims against the estate but before entry of the Confirmation Order. Merely being served with a subpoena does not mean that one is facing possible indictment. In fact, appellee Clear Shield never received notice that it was ever a target of the grand jury investigation nor was it indicted by the grand jury. Having attorneys assist in the gathering of the documents requested by the subpoena also does not demonstrate in any manner that appellee Clear Shield knew that potential antitrust claims could be brought against it. Appellants argue that the bankruptcy court ignored the reasonable inferences drawn from the fact that appellee Clear Shield received a subpoena from the grand jury and the fact that appellee Clear Shield's attorneys had their fee petitions to the bankruptcy court redacted. There are, however, no inferences to be drawn from these facts. It is undisputed that appellee Clear Shield received a subpoena in August 1993, after the bar date but before the Confirmation Order and that appellee Clear Shield had attorneys assist it in responding to the subpoena. What appellants fail to accept is that mere receipt and response to a subpoena from the grand jury does not mean that one is a target of the grand jury or that indictment is imminent. Appellee Clear Shield's parent corporation also fully disclosed the fact that appellee Clear Shield had received a subpoena in its December 31, 1993 Form 10–K filed with the Securities and Exchange Commission on March 31, 1994. Appellants fail to show that appellee Clear Shield's conduct in any way prevented appellants from filing their antitrust claims sooner. Appellee Clear Shield did nothing wrong by not including the receipt of the subpoena in their bankruptcy documents.

Appellants presented three documents to the bankruptcy court that they claim support their belief that appellee Clear Shield violated antitrust laws. The three documents are: (1) a fax cover sheet from Dispoz–O Plastics, Inc. dated June 10, 1993 that states the belief that appellee Clear Shield will announce a price increase; (2) a proposed price increase announcement from Dispoz-O Plastics, Inc. dated June 14, 1993 that has handwritten writing on it stating in capital letters to not issue the letter; and (3)

1. Appellants' argument in essence is premised on the notion that appellee Clear Shield's conduct constitutes fraud or a misrepresentation to the bankruptcy court by not disclosing potential antitrust claims prior to entry of the Confirmation Order. While appellants phrase their argument as falling under Rule 60(b)(6), such an argument is really one under Rule 60(b)(3). *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 878 F.2d 182, 184 (7th Cir.1989). Rule 60(b)(3) is for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party" while Rule 60(b)(6) is for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ, P. 60(b)(3), 60(b)(6). "[I]f the asserted grounds for relief fall within the terms of the first three clauses of Rule 60(b), relief under the catchall provision [Rule 60(b)(6) ] is not available." *Wesco Prods. Co. v. Alloy Automotive Co.*, 880 F.2d 981, 983 (7th Cir.1989). The Rule 60(b)(6) "catchall" provision cannot be invoked to evade the express one-year limitation on Rule 60(b)(3) motions based on fraud in procuring a judgment. *Gekas v. Pipin (In re Met–L–Wood Corp.)*, 861 F.2d 1012 (7th Cir.1988). Appellants' argument, therefore, would be precluded since appellants failed to file their Rule 60(b) motion within one year from the entry of the Confirmation Order. *In re Chicago*, 878 F.2d at 184. Indeed, appellants' original motion contained a claim under Rule 60(b)(3) that was denied by the bankruptcy court as being time-barred *In re Envirodyne*, 206 B.R. at 471. This court will address the merits of appellants' argument, however, since the bankruptcy court did and appellants' argument does not lead to the conclusion that the bankruptcy court erred in denying appellants' Rule 60(b)(6) motion.

appellee Clear Shield's June 10, 1993 announcement of a price increase.[2] The bankruptcy court determined that the documents did not incriminate appellee Clear Shield at all. This court agrees. Viewing the evidence in the light most favorable to appellants, there is nothing in the documents that demonstrates that appellee Clear Shield knew any of its competitors' price information prior to the public or that appellee Clear Shield shared information with anyone else. Furthermore, the issue in this appeal is not whether or not appellee Clear Shield actually committed antitrust violations. *In re Penn Cent. Transp. Co.*, 771 F.2d 762, 771 (3d Cir.1985). The issue is whether appellee Clear Shield actively prevented appellants from asserting their antitrust claims prior to being barred by the bankruptcy proceeding. *Id.* There is nothing in these three documents that demonstrate that appellee Clear Shield concealed any activity with the purpose of hindering appellants' ability to file their claims earlier.

 Appellants try to argue that they have not been able to conduct extensive discovery to produce further evidence that appellee Clear Shield knew of potential antitrust claims prior to the bankruptcy bar date. If appellants do not have the proper documents to demonstrate that appellee Clear Shield acted improperly, it is not the place for the courts to surmise what appellee Clear Shield might have done. This is not the standard for a motion for summary judgment or a Rule 60(b) motion. The bankruptcy court did not and could not have granted appellants' Rule 60(b)(6) motion on appellants' mere speculation or strong belief that appellee Clear Shield committed antitrust violations. Furthermore, appellants filed summary judgment documents as did appellee Clear Shield. If appellants did not have the ability at the time to file appropriate documents to withstand summary judgment, appellants should have filed an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure and requested more time for discovery from the bankruptcy court. *United States v. All Assets & Equip. of West Side Bldg. Corp.*, 58 F.3d 1181, 1190 (7th Cir. 1995). Since appellants did not ask for more time for discovery, the bankruptcy court had to rely on the evidence before it and not on any speculation as to what appellants believe further discovery could show. There is no genuine issue of material fact in dispute and appellee Clear Shield is entitled to judgment as a matter of law, therefore summary judgment was appropriately entered in favor of appellee Clear Shield. Accordingly, appellants have not met the burden of Rule 60(b)(6) and the bankruptcy court properly denied appellants' motion.

## C. *Notice of Appellee Clear Shield's Bankruptcy Proceedings*

 Appellants argue that they did not receive formal notice of their potential antitrust claims from appellee Clear Shield in violation of their right to due process. In analyzing a due process claim, the interests between the state and the individual must be balanced. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The state has an interest in bringing bankruptcy cases to a final settlement, enabling the debtor to have a fresh start and protecting the interests of other creditors, and the individual has a right to due process of law prior to being deprived of a property right. *Id.* Due process, therefore, requires that a debtor who files for Chapter 11 bankruptcy protection give notice that is reasonably calculated under the circumstances to apprise an interested party of the pendency of the bankruptcy case. *Id.* Once the time for filing a proof of claim is passed, such claim is barred, discharged for-

**2.** This court notes for appellants that evidence set forth as exhibits to motions for summary judgment or briefs in opposition to motions for summary judgment must be competent evidence of a kind otherwise admissible at trial. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 n. 2 (7th Cir.1994). Accordingly, appellants' argument that it is irrel- evant whether these documents constitute hearsay and that the handwriting on the second document has not been authenticated is incorrect. Since the bankruptcy court considered these documents in making its decision, the documents do not aid appellants, and appellee Clear Shield has withdrawn its appeal regarding the admissibility of these documents, this court will not address whether or not these documents are improper.

ever, and the creditor forfeits his or her entitlement to distribution from the bankruptcy estate. *In re Plunkett,* 82 F.3d 738, 742 (7th Cir.1996). A creditor's bankruptcy claim cannot be discharged, however, if that creditor never received adequate notice of the claim. *Mullane,* 339 U.S. at 317–18, 70 S.Ct. at 659.

In determining the proper form of notice of a bankruptcy claim bar date that needs to be given, courts divide creditors into two groups, known and unknown creditors. *Id.,* 339 U.S. at 317–18, 70 S.Ct. at 658–59. Actual notice is necessary only as to known creditors while constructive notice is sufficient for unknown creditors. *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 974 F.2d 775, 788 (7th Cir.1992). Actual notice of a debtor's bankruptcy filing and bar date must be provided to known creditors. *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). A known creditor is one who is known or reasonably ascertainable by the debtor. *Tulsa Prof'l Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988). Constructive notice can be satisfied through publication notice since "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane,* 339 U.S. at 317, 70 S.Ct. at 658. An unknown creditor is one whose interests are conjectural or "although they could be discovered upon investigation, do not in due course of business come to knowledge" of the debtor. *Id.,* 339 U.S. at 317, 70 S.Ct. at 659.

A creditor is reasonably ascertainable if he or she can be identified through reasonably diligent efforts. *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983). Reasonable diligence does not, however, require impracticable and extended searches in the name of due process. *Mullane,* 339 U.S. at 317–18, 70 S.Ct. at 659. "The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these docu-

ments are generally not required." *Chemetron Corp. v. Jones,* 72 F.3d 341, 347 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1424, 134 L.Ed.2d 548 (1996). A debtor does not have the "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.),* 125 B.R. 650, 655 (M.D.Fla.1991). It is also "not required that a debtor search for those who might have been or might not have been injured." *Charter Int'l Oil Co. v. Ziegler (In re Charter Co.),* 113 B.R. 725, 728 (M.D.Fla.1990).

This court agrees with the bankruptcy court's determination that appellants were unknown creditors to appellee Clear Shield. Appellee Clear Shield conducted a review of their books and records and interviewed its employees in order to prepare its schedules and statement of financial affairs and to determine what claims existed against it. There was no possible way for appellee Clear Shield to ever run across the names of appellants Eisenberg and Servall since they were never customers of appellee Clear Shield and therefore there was no reason to conclude that they should be considered creditors. With respect to appellant St. Cloud, appellee Clear Shield's records showed that appellant St. Cloud did not owe Clear Shield any money nor did Clear Shield owe St. Cloud any money. Accordingly, there was no reason for appellee Clear Shield to have to give actual notice to appellant St. Cloud since it was not a creditor. Appellee Clear Shield used reasonably diligent efforts to determine who constituted their known creditors. There was no reason for appellee Clear Shield to have had to search out appellants and create reasons for appellants to make a claim against it.

Appellants continue to argue that appellee Clear Shield's receipt of the grand jury subpoena signified that appellants became known creditors of appellee Clear Shield. There is no justification to reach this conclusion. As stated earlier in this opinion, mere receipt of the subpoena by appellee Clear Shield does not mean that antitrust claims would be imminent or even possible

against appellee Clear Shield. There has been no showing that the antitrust claims were anything more than conjectural to appellee Clear Shield. Therefore, there was no potential liability of which appellee Clear Shield knew that warranted the necessity for actual notice to any of the appellants. Since appellants were unknown creditors of appellee Clear Shield past the entry of the Confirmation Order, the constructive notice appellee Clear Shield published in the *Wall Street Journal,* the *New York Times,* and the *Chicago Tribune,* was sufficient notice of the bankruptcy proceeding. *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 112 B.R. 920, 924 (N.D.Ill.1990). Appellants also argue that appellee Clear Shield's published constructive notice should have provided notice of potential antitrust claims. In essence, appellants argue that they were entitled to notice of the existence and nature of their antitrust claims. The Bankruptcy Code, however, does not make such a requirement. *In re Penn Cent. Transp. Co.,* 42 B.R. 657, 663 (E.D.Pa.1984), *aff'd,* 771 F.2d 762 (3d Cir.1985).

Appellants stress that it is inconsistent for the bankruptcy court to determine that their antitrust claims had to have been raised before the entry of the Confirmation Order and yet conclude that they were unknown creditors and only required constructive notice. These findings are not inconsistent. "Admittedly it may not seem entirely fair to require a party who has no actual notice of a bankruptcy to raise a claim before the bankruptcy court or be forever barred from raising such claims. We must keep in mind, however, that the bankruptcy provisions constitute an attempt to balance various interests ... [t]hese interest are better served if a bankruptcy court has all claims before it when distributing a debtor's property." *In re Chicago,* 974 F.2d at 788. This court agrees with the bankruptcy court's determination that appellants were unknown creditors. Due process only required that appellants receive constructive notice of appellee Clear Shield's bankruptcy, which they did. Therefore, appellants' antitrust claims against appellee Clear Shield were discharged by the bankruptcy confirmation. Accordingly, the bankruptcy court properly denied appellants' Rule 60(b)(6) motion.

### D. *Detection of Appellants' Antitrust Claims*

Appellants' final argument is that the bankruptcy court erred in determining that their antitrust claims against appellee Clear Shield were capable of detection prior to the bankruptcy proceedings. Appellants claim that appellee Clear Shield's alleged antitrust violations occurred between October 1990 and at least April 1992. The bankruptcy court concluded that these purported violations had they occurred were capable of detection by appellants well before entry of the Confirmation Order. Accordingly, the bankruptcy court found that appellants' claims were mature, uncontingent, and therefore discharged by the Confirmation Order.

Appellants argue that it is a paradox to conclude that appellants were unknown creditors and did not deserve formal notice of appellee Clear Shield's bankruptcy proceeding, yet appellants' antitrust claims were mature as of the Confirmation Order and therefore discharged. The bankruptcy court correctly concluded that there is no conflict by making these conclusions. As stated above, a bankruptcy claimant can be unaware that he or she has a claim and yet still relinquish such claim as a result of the bankruptcy proceedings. *See In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 974 F.2d 775, 788 (7th Cir.1992). The goal of bankruptcy is to provide fairness among creditors and thereafter to give a debtor a fresh start. Such a goal "would be frustrated if creditors who failed to file timely claims tried to bring claims against a reorganized company after the close of bankruptcy. For this reason, the timely filing of claims is vital to the purposes underlying bankruptcy." *Id.* at 779.

The issue is whether appellants' antitrust claims against appellee Clear Shield were discharged by the bankruptcy court's Confirmation Order since they were mature and uncontingent at that time. The purported antitrust violations allegedly occurred, if at all, between October 1990 and at least April 1992. A federal antitrust claim arises

**350**

when a party commits an anticompetitive act that injures the plaintiff. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). An antitrust claim constitutes a bankruptcy claim since it is based upon federal statutes that create substantive obligations separate from bankruptcy law. *In re Penn Cent. Transp. Co.,* 771 F.2d 762, 766 (3d Cir.1985). In this case, appellants argue that they could not detect that they had a cause of action against appellee Clear Shield due to the nature of an antitrust conspiracy. In essence, appellants argue that even though all of the acts of which they complain occurred before appellee Clear Shield petitioned for bankruptcy, the time of discovery of their cause of action should be tolled because it is an antitrust claim that appellee Clear Shield fraudulent concealed. Tolling of the antitrust statute of limitations due to an alleged illegal conspiracy and fraudulent concealment is an equitable, judicially created doctrine, but not part of the actual antitrust legislation. *In re Penn Cent. Transp. Co.,* 42 B.R. 657, 668 (E.D.Pa.1984), *aff'd,* 771 F.2d 762 (3d Cir.1985). "The concealment standard for tolling of the antitrust statute of limitations is designed to ensure achievement of the substantive policies of the antitrust laws. On the other hand, any modification of a confirmation order is antithetical to the objectives of the bankruptcy laws." *Id.* In this case, after evaluating all of the facts presented in the light most favorable to appellants, this court agrees with the determination of the bankruptcy court that appellants' antitrust allegations against appellee Clear Shield were capable of detection prior to their being discharged by the Confirmation Order. All of the acts appellants contend appellee Clear Shield committed, that supposedly affected appellants as purchasers of plastic cutlery, occurred well before Clear Shield's bankruptcy Petition Date. Accordingly, appellants' antitrust claims arose at the time appellee Clear Shield allegedly committed the acts and were therefore discharged by the Confirmation Order.

 Even in considering whether the equitable tolling doctrine applies, this court cannot conclude that appellants could not have discovered appellee Clear Shield's alleged actions earlier.[3] Under the equitable tolling doctrine, appellants must show that they did not discover appellee Clear Shield's alleged wrongdoing although they diligently inquired into the circumstances. *United Nat'l Records, Inc. v. MCA, Inc.,* 609 F.Supp. 33, 35 (N.D.Ill.1984). Appellants have made no showing that their claims were not capable of detection prior to either the bar date or the entry of the Confirmation Order. Moreover, appellants fail to articulate whether or not they made any inquiries into the circumstances prior to discovering their claims, let alone diligent inquiries. Accordingly, there are no facts presented that warrant any tolling of the period of discovery.

 The second type of fraudulent behavior that may warrant the tolling of the statutory limitation period is the "fraudulent

---

**3.** This court recognizes that the tolling doctrine applies to the statutory limitation period for the filing of antitrust claims and that statutory limitation periods do not necessarily address the same issues or principals as the determination of when a claim arises for bankruptcy purposes. *See Wisconsin Barge Lines, Inc. v. United States (In re Wis. Barge Lines, Inc.),* 91 B.R. 65, 68 (Bankr.E.D.Mo.1988) (stating that a claim "arises for bankruptcy purposes at the time of the act giving rise to the claim, notwithstanding that access to a court or the running of a statute of limitations may be timed from some other point"), *Roach v. Edge (In re Edge),* 60 B.R. 690, 699 (Bankr.M.D.Tenn.1986) (stating "[t]he statute of limitations cases do not concern the same issues or the same principals" as bankruptcy claims). This is because the Bankruptcy Code defines the term "claim" to include rights to payment or equitable relief that are unmatured

and unliquidated while non-bankruptcy law considers unmatured and contingent claims unenforceable. 11 U.S.C. § 101(5): *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 6 F.3d 1184, 1192 & n. 11 (7th Cir.1993). The argument raised by appellants that they could not have discovered their antitrust claims earlier, however, lends itself to an analysis similar to the equitable tolling doctrine. Appellants' argument raises this theory and appellants point to an allegation in their civil complaint that the statute of limitations period should be suspended due to the federal doctrine of fraudulent concealment. Appellants' Compl. ¶ 23. Regardless of which theory is used, appellants could have and should have discovered their antitrust claims prior to the Confirmation Order. Appellants' antitrust claims were, therefore, discharged by appellee Clear Shield's bankruptcy.

concealment doctrine." *Id.* Under this doctrine, appellants must allege that appellee Clear Shield took positive steps after commission of the fraud to keep it concealed. *Id.* Appellants state no facts that demonstrate how appellee Clear Shield concealed their actions so that appellants were unable to assert their claims prior to their being barred by the bankruptcy proceeding. Appellants merely point to their complaint that alleges that defendants and co-conspirators fraudulently concealed the existence of the conspiracy. Appellants present no facts to support this bald allegation. Appellants cannot defeat a motion for summary judgment merely by pointing to an allegation in their complaint. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Appellants continue to argue that appellee Clear Shield received a subpoena from the grand jury and did not respond to the subpoena until after the Confirmation Order. This fact alone, however, does not demonstrate that appellee Clear Shield took steps to conceal the alleged conspiracy. Appellee Clear Shield did not appear to hide the fact that they received the subpoena. Appellee Clear Shield responded to the subpoena and disclosed to the public in its parent company's Form 10–K that it had received a subpoena. The three documents submitted by appellants regarding the price increase by appellee Clear Shield and pertaining to Dispoz-O Plastics, Inc., also do not demonstrate any act of fraudulent concealment by appellee Clear Shield. Appellants simply argue that due to the nature of an antitrust conspiracy, they were incapable of detecting their claims prior to the Confirmation Order. Such an assertion with no facts to support such a conclusion, is insufficient to warrant granting appellants' Rule 60(b)(6) motion. Appellants fail to demonstrate any genuine issue of fact as to whether they could not have discovered their antitrust claims prior to entry of the Confirmation Order.

■ Appellants focus on the fact, which the bankruptcy court accepted, that they did not know about their antitrust claims prior to appellee Clear Shield's bankruptcy confirmation. Appellants, however, could have and should have known about their antitrust claims against appellee Clear Shield prior to their being discharged. That appellants did not know about them at the time is not the issue. The bankruptcy laws state that claims that are asserted after confirmation are discharged, there is no exception for claims that were unknown to a claimant at the time. *In re Penn Cent. Transp. Co.,* 42 B.R. at 675 (finding that antitrust claims were discharged by bankruptcy confirmation even though appellants stated their antitrust claims were unknown to them at the time).

This conclusion follows other case law that pertain to environmental claims. The bankruptcy court in this case noted that antitrust claims are similar in characteristic to environmental claims. *In re Envirodyne,* 206 B.R. at 472. Many cases have held that contingent environmental claims of which the claimants were not aware prior to confirmation of the bankruptcy can be discharged by bankruptcy confirmation if the claims are the result of conduct that occurred prior to the bankruptcy petition. *See Texaco Inc. v. Sanders (In re Texaco Inc.),* 182 B.R. 937, 953–54 (Bankr.S.D.N.Y.1995) (discussing various cases and concluding that environmental claims were preconfirmation claims and discharged by bankruptcy since they were capable of detection even though the claimants had no knowledge of the claims).

Additionally, appellants strenuously argue that they had no prepetition relationship with appellee Clear Shield through which they should be held accountable to have detected their claims earlier. Appellants, however, are not bringing their antitrust claims against only Clear Shield. There are other defendants in appellants' civil litigation with whom appellants claim appellee Clear Shield conspired to violate antitrust laws. Appellant Eisenberg and appellant Servall were customers of the other defendants, and appellant St. Cloud was a direct customer of appellee Clear Shield at the time of the alleged antitrust conspiracy. Moreover, all of the appellants were direct purchasers in the plastic cutlery industry at the time of the alleged antitrust conspiracy. All appellants had a direct interest in the pricing of plastic cutlery, otherwise there would be no reason

for their civil complaint. Accordingly, appellants were all in a position where they could have discovered their antitrust claims against appellee Clear Shield earlier than when they filed their civil complaint. That they in fact did not is not relevant. Appellants' antitrust claims are claims that were discharged by appellee Clear Shield's bankruptcy confirmation since they fit within the broad statutory definition of a claim prescribed by Congress in 11 U.S.C. § 101(5). Appellants' claims were capable of detection and thus mature and uncontingent at the time of the Confirmation Order.

Furthermore, appellants waited to file their civil cases until almost two years after appellee Clear Shield disclosed that it was served with a subpoena by the grand jury in its Form 10–K filed with the Securities and Exchange Commission on March 31, 1994. Surely appellants were on notice of any potential antitrust claims against appellee Clear Shield then. Perhaps had appellants filed their Rule 60(b) motion soon after that March 31, 1997 disclosure, the bankruptcy court might have evaluated the case differently. *See In re Chicago*, 974 F.2d at 788. Appellants' antitrust claims against appellee Clear Shield were filed February 5, 1996, well after appellants should have known about them. Accordingly, the bankruptcy court did not abuse its discretion in denying appellants' Rule 60(b)(6) motion and there is no error in the bankruptcy court's decision to grant appellee Clear Shield's motion for summary judgment and deny appellants' motion for summary judgment. Therefore, the decision of the bankruptcy court is affirmed.

## CONCLUSION

Based on the above stated reasons, appellee Clear Shield's motion to strike is granted in part, tabs A, B, and C of appellants' appendix to their reply brief are stricken, but the remaining part of appellee Clear Shield's motion to strike is denied. The decision of the bankruptcy court is AFFIRMED.